McLAUGHLIN, Appellant, v. BARDSEN et al., Respondents.

(No. 3,442.)

(Submitted January 5, 1915. Decided January 18, 1915.)

[145 Pac. 954.]

*Personal Injuries—Realty—Duty of Owner Toward Trespasser —Cities and Towns—Excavations—Mines and Mining—Statutes—Presumptions — Negligence—Wantonness — Nonsuit— Error.*

Statutes—Interpretation—Means Available.
   1.   The arrangement and classification of statutes, their titles and head-notes, are proper and available means from which to determine legislative intent.
      [As to rules of construction of statutes, see note in 12 Am. St. Rep. 826.]

Penal Statutes—Extension by Implication.
   2.   A highly penal statute cannot be extended by implication.

Mines and Mining—"Cut"—Definition.
   3.   The word "cut" when used in conjunction with "shaft" and "drift," *held* to mean a surface opening in the ground intersecting a vein.

Same—Cities and Towns—Statutes—Excavations.
   4.   *Held,* that section 8535, Revised Codes, making it obligatory on persons sinking shafts or running drifts or cuts within the corporate limits of a city, *etc.,* to properly guard the same under a heavy penalty

for failure to do so, has no application to a ditch or trench temporarily opened for the purpose of laying sewer-pipe.

Same—Cities and Towns—Ordinances—"Excavations"—Definition.

5.   An ordinance making it unlawful to permit any "shaft, drift or prospect hole *or other excavation*" to remain unguarded within the limits of a city where mining is the principal industry, *held* not to be susceptible of application to a trench dug for sewer-pipe purpose, the words "or other excavation," under the rule of *ejusdem generis* or *noscitur a sociis,* being referable to an excavation made in the course of prospecting or active mining.

Real Property—Occupancy—Presumptions.

6.   In the absence of evidence to the contrary, one's occupancy of a house must be treated as rightful; no inference of wrongful occupancy being permissible.

Same—Duty of Owner Toward Trespasser—Common-law Liability.

7.   At common law the land owner is required merely to refrain from any intentional or wanton acts occasioning injury to a trespasser upon his property.

[As to expulsion of trespassers, see note in 93 Am. St. Rep. 254.]

Same—Who Deemed Owner.

8.   Persons in possession of land under an easement must be treated as the owners for the purpose of determining whether they owed any duty to one who sustained personal injuries while upon the premises.

Same—Negligence of Owner—Wantonness—What may Constitute.

9.   Wantonness on the part of a land owner causing injury to a trespasser may be shown by acts of omission as well as by acts of commission, where the facts disclose a reckless disregard of the lives or safety of others.

Appeal and Error—Nonsuit—Evidence of Plaintiff—How Viewed.

10.   On appeal from a judgment rendered on a nonsuit, the evidence will be considered in the view most favorable to plaintiff, and every fact which the evidence tends to prove treated as proved.

Personal Injuries—Negligence of Land Owner—Wantonness—Evidence—Nonsuit—Error.

11.   Evidence of plaintiff *held* to have made out a *prima facie* case of common-law liability on the part of defendant contractors, because of their reckless disregard of the lives and safety of others, it being shown that they dug a deep trench across a well-defined path over uninclosed land which had been used by the public for several years in going to and coming from their homes, defendants leaving the excavation unguarded and unprotected for a period covering two or three weeks, as a consequence of which negligence plaintiff, not knowing of the existence of the trench, fell into it in the night-time and was injured; hence the court erred in granting a nonsuit.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Katie McLaughlin against R. M. Bardsen and others, partners as R. M. Bardsen & Co.   From a judgment rendered on a nonsuit, plaintiff appeals.   Reversed and remanded.

*Mr. James M. Hinkle,* for Appellant, submitted a brief, as well as one in reply to that of Respondents, and argued the cause orally.

There are three questions involved in this appeal, either one of which, if decided in favor of the appellant's contention, will entitle appellant to a new trial of this action: 1. Liability of defendants under the general law of negligence; 2. Liability under the state law of Montana; 3. Liability under the ordinances of the city of Butte.

Statutory and common-law liability may be joined in the same action. In the case of *Smith* v. *Denver & R. G. Ry. Co.,* 54 Colo. 288, 130 Pac. 1009, the court goes into the question of statutory and common-law liability; also in *Crissey & F. Lumber Co.* v. *Denver etc. Ry. Co.,* 17 Colo. App. 275, 68 Pac. 670. (See, also, 1 Thompson on Negligence, secs. 10–13; *Rogers* v. *Ponet,* 21 Cal. App. 577, 132 Pac. 851.)

Common law: "The common law is reason dealing by light of experience in human affairs." (6 Ency. Law, 269.) Most personal injury cases are common-law actions. *Birsch* v. *Citizens' Electric Co.,* 36 Mont. 574, 93 Pac. 940, and *Bourke* v. *Butte etc. Power Co.,* 33 Mont. 267, 83 Pac. 470, were common-law actions. The statute and city ordinance only prescribe specific duties on persons digging ditches at such places, and make a penalty for violations of such duties, but they do not change, nor take from, the common-law liability for negligence, in leaving said ditch in such condition. Under them the violation thereof is negligence *per se;* under the common law it is a question for the jury to determine from all the acts and circumstances whether there was negligence. We insist that this case should have been submitted to the jury for its determination on the question of negligence.

The case of *De Tarr* v. *Ferd. Heim Brewing Co.,* 62 Kan. 188, 61 Pac. 689, is also a common-law case, and the facts in that case are almost the same as the case at bar. In that case there was a privy vault left open on a private lot which people were accus-

tomed to cross and the plaintiff fell in and was injured. The case at bar is a stronger case of negligence, for the reason that the ditch was across the road. The following are common-law negligence cases: *Schwartz* v. *California Gas & Elec. Co.,* 163 Cal. 398, 125 Pac. 1044; *Barnes* v. *Brown,* 95 Mich. 576, 55 N. W. 439; *Muller* v. *Hale,* 138 Cal. 163, 71 Pac. 81; *Riley* v. *Northern Pac. R. Co.,* 36 Mont. 545, 9 Ann. Cas. 847, 5 L. R. A. (n. s.) 536, 93 Pac. 948; *Chidester* v. *Consolidated Ditch Co.,* 59 Cal. 197; *Davoust* v. *City of Alameda,* 149 Cal. 69, 84 Pac. 760; *Hanson* v. *Spokane Valley L. & Water Co.,* 58 Wash. 6, 107 Pac. 863; *Hill* v. *President etc. University,* 61 Or. 190, 121 Pac. 901; *Carskaddon* v. *Mills,* 5 Ind. App. 22, 31 N. E. 559.

A recent case, *Connally* v. *Woods,* 39 Okl. 186, 134 Pac. 869, is a common-law negligence case, and is decisive of the principle contended for by appellant, *viz.,* that it is a common-law liability to be submitted to the jury. In that case an excavation was dug on the owner's private lot near another house and away from a public highway. Plaintiff fell in and was injured, held that there was a liability.

Statutory liability: We contend that the court erred in its construction of section 8535, Civil Code, especially the latter part of said section wherein the legislature uses the words "mining, irrigating and other ditches." Counsel cited a number of authorities as an inducement to the court to construe the said section of the statute to mean only "mining and irrigating ditches" and to disregard "other ditches" mentioned by the legislature. Our contention is that the intention of the legislature is so plain that there can be but one construction put upon it, *viz.,* that it means other ditches besides mining and irrigating ditches.

In construing a statute the intention of the legislature must control, and the language used must be construed so that every word and phrase must be given its meaning and not be disregarded. (Endlich on Interpretation of Statutes, secs. 1, 2, 4, 6; 58; 36 Cyc. 1114; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833; 2 Current Law,

p. 1724.)   Every word should be given full effect, if possible. (2 Current Law, 1727; *State* v. *Cave,* 20 Mont. 468, 52 Pac. 200; *Hedges* v. *County Commissioners,* 4 Mont. 280, 1 Pac. 748.)   As to proper construction of the word "other," see *Kansas City etc. Ry. Co.* v. *Wallace,* 38 Okl. 233, 132 Pac. 909, 46 L. R. A. (n. s.) 112.   Failure to observe the duty imposed by section 8535, Revised Codes, is negligence, and creates a civil liability for damages.   (*Conway* v. *Monidah Trust Co.,* 47 Mont. 269, 132 Pac. 26.)   We submit that under the pleadings and evidence in this case the plaintiff not only made out a good case for liability under the common-law rule of negligence, but also a good case under the provisions of section 8535 in connection with sections 6040, 6041 and 5051.

Liability under city ordinance: The same law of construction and rule contended for by the appellant for liability under the statute equally applies to the liability under the city ordinance, and without repeating what is said and the cases cited under the statutory liability, reference is made with equal force to that part of the brief and argument as applicable to the liability under the city ordinance.   The city having the authority to pass laws for the protection of the people within its limits, such laws are just as binding and enforceable as if they were laws passed by the legislature.

*Messrs. J. L. Wines* and *T. J. Harrington,* for Respondents, submitted a brief.   *Mr. Wines* argued the cause orally.

Our contention is that appellant has failed to show any common-law liability.   We deem it unnecessary to cite authorities in support of our position, that neither the existence of a highway nor street by the action of the public authorities, nor by dedication upon the part of the owner, has been shown.   The cases which we shall cite fully support our contention that no highway or street has been shown by user, and consequently there is no common-law liability, for the reason that to create a common-law liability it must have been shown that the sewer in question was dug so near a highway or street that it became

dangerous to persons passing along such highway or street. If dug upon private property by those having a right of way therefor, it is not within the exception to the general rule stated. There is no escape from the fact that the sewer where appellant fell was either constructed upon or near a public highway or street, or that it was dug upon private property and at least one hundred feet from any highway or street. No recognition by the public authorities to any extent whatever has been attempted. This will be considered as being a strong circumstance against the open space in question having ever been considered by the public as a street or highway. (Elliott on Roads and Streets, 137; *State* v. *Auchard,* 22 Mont. 14, 55 Pac. 361; *State* v. *Horn,* 35 Kan. 717, 12 Pac. 148; *Shellhouse* v. *State,* 110 Ind. 509, 11 N. E. 484.) As to the duty of respondents in this case, see 1 Thompson on Negligence, sec. 1228; *Overholt* v. *Vieths,* 93 Mo. 422, 3 Am. St. Rep. 557, 6 S. W. 74; *Redigan* v. *Boston etc. R. R. Co.,* 155 Mass. 44, 31 Am. St. Rep. 520, 14 L. R. A. 276, 28 N. E. 1133; *Klix* v. *Nieman,* 68 Wis. 271, 60 Am. Rep. 854, 32 N. W. 223; *Murphy* v. *City of Brooklyn,* 118 N. Y. 575, 23 N. E. 887; s. c., 98 N. Y. 642; *Egan* v. *Montana Cent. R. Co.,* 24 Mont. 569, 63 Pac. 831; *Driscoll* v. *Clark,* 32 Mont. 172, 80 Pac. 1, 373. This rule is clearly stated in 29 Cyc. 444, 445.

No liability under section 8535, Revised Codes: Was there any liability in this case under the provisions of section 8535 of the Revised Codes? Taking the whole history of legislation upon the subject, the rule seems to be fairly well settled that the word ''cut'' found in the section can only apply to a ''cut'' in connection with mining operations, and, for the same reason, the word ''other ditches'' in the same section can only apply to and mean ditches connected with the business of mining or irrigation, and therefore cannot include a sewer. Sutherland on Statutory Construction, section 268, uses this language: ''When there are general words following particular and specific words, the former must be confined to things of the same kind.'' (Also see sec. 273; 36 Cyc. 1119, 1920, and note 40; *Greenville Ice & Coal Co.* v. *City of Greenville,* 69 Miss. 86, 10 South. 574; *State*

v. *Dinnisse,* 109 Mo. 434, 19 S. W. 92; *American Manganese Co.*
v. *Virginia Manganese Co.,* 91 Va. 272, 21 S. E. 466; *People* v.
*New York & M. B. Ry. Co.,* 84 N. Y. 565; *State* v. *Black,* 75
Wis. 490, 44 N. W. 635.) The decision of this court in the case
of *Conway* v. *Monidah Trust,* 47 Mont. 269, 132 Pac. 26, does not
militate against the position taken by respondents, for the reason
that the facts in that case brought it clearly within the pro-
visions of section 8535, that being a mining shaft into which
the plaintiff fell.

No liability in this case under the city ordinance plead by
plaintiff: If there was no liability under section 8535, then it
is evident that there can be no liability under the city ordinance,
and what we said in support of our position that there is no
liability under the statute, will equally apply in this portion of
our argument. The prohibitive words in the ordinance only
apply to "any shaft, drift, prospect hole or other excavation."
The words "shaft, drift, prospect hole" can only apply to min-
ing operations.

We also take the position that the city ordinance should not
be considered, for a further reason. It is true the rule is quite
well settled that a civil liability for damages exists where dam-
ages result from a breach of a prohibitive statute, yet the same
is not true where the breach consists of a violation of a city
ordinance. Evidently for the purpose of bringing this case
within the terms of the city ordinance, appellant alleges in her
complaint that the place where appellant fell was a "common."
The definition of the word "common" is so well known, and in
view of the fact that no effort was made to show that the place
where appellant fell was upon, or in or constituted a part of a
"common," we do not consider that this phase of the case
demands any further notice.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

In September, 1912, the city of Butte let a contract to Bard-
sen, Hammer and Larson to install a public sewer for the city,

and in execution of the agreement the contractors caused to be excavated a trench in which to lay the sewer-pipe. The line of sewer was parallel with and about 100 feet from Anaconda Road, a public street of the city. One portion of the sewer trench within the city limits was in front of, and but a few feet from, the house occupied by Dan Martin, designated No. 27 Anaconda Road. During the progress of the work the contractors were delayed for fifteen days or more, and during that interval the trench in front of the Martin home was left open. As soon as the pipe could be laid after work was resumed, the trench was filled. There was a path or roadway leading from Anaconda Road to the north to the Martin home and to other houses in the immediate neighborhood, and the section of the trench in front of the Martin house, about three feet wide, twelve feet long, and twelve or thirteen feet deep, extended across, or at least two or three feet into, this path or roadway and was left open and unguarded, and without lights or other signals to indicate danger. During the time the work was interrupted, and on the evening of October 13, 1912, when it was so dark that the excavation could not be seen, and when its existence was unknown to her, Katie McLaughlin, while traveling along this path or roadway north from Anaconda Road, to visit at the Martin home, fell into the trench in front of the Martin house and was severely injured. She brought this action against the contractors to recover damages, but the trial court nonsuited her, and these appeals are prosecuted to have determined whether upon the agreed facts, and the evidence offered by the plaintiff supplementary thereof, there is shown any liability on the part of the contractors.

Concerning the path or roadway, the witness Martin testified: "There was a well-beaten road or traveled way leading from Anaconda Road up to my house and on up beyond my house that people traveled on going back and forth from Anaconda Road up to and past my house. There were many people traveled that way. It was the only way to go from Anaconda Road up in that neighborhood. There were a good many houses up

in that neighborhood. The defendants dug this ditch easterly and westerly in front of my house. My house faces south toward Anaconda Road.''

Frank Reynolds testified: ''I have known that traveled way leading up from Anaconda Road for about seventeen years. I traveled over it that long ago, and have traveled over it different times since. It was a well-beaten traveled way. It ran up between two dumps, about twelve or fifteen feet apart, from Anaconda Road up past where Dan Martin's house is to the neighborhood beyond, and was the only way of going up that way. There is a crossing in the sidewalk where this traveled way leaves Anaconda Road. There were no sidewalks on either side of this traveled way. * * * I have traveled over that traveled way from Anaconda Road up that way in the last seventeen years about four times. After you get up to Dan Martin's house then the paths branch off different ways to go to the different places and houses in that neighborhood.''

Mrs. Martin and the plaintiff were intimate friends, accustomed to visit each other at their respective homes, and the path or roadway leading to the Martin home from Anaconda Road was well known to the plaintiff. There is not any evidence in the record as to who owned the land at the point where the accident occurred; but defendants had secured a right of way for the sewer, and from that fact it may be inferred that the land was held in private ownership. It was, however, open and uninclosed. There is not any evidence that the owner knew of the use of his property by the people of the vicinity or the existence of the path or roadway, which, so far as the record discloses, was not a public thoroughfare of any character.

*Statutory Liability.* Section 8535, Revised Codes, provides: ''Every person who sinks any shaft or runs any drift or cut, or causes the same to be done, within the limits of any city or town or village in this state, or within one mile of the corporate limits of any city or town, or within three hundred feet of any street, road or public highway, and who shall fail to place a substantial cover over or tight fence around the same, is punishable by a

fine not exceeding one thousand dollars ($1,000).  *  *  *
Mining, irrigating and other ditches may be dug or cut to a
depth not exceeding ten feet without incurring the penalty of
this section.'' This statute was first enacted in 1871 (Codified
Stats. 1871, p. 593), and with very slight amendments has been
[1, 4] brought forward to the present time. The arrangement
and classification of statutes, their title and headnotes, are all
proper and available means from which to determine legislative
intent. (*Hardesty* v. *Largey Lumber Co.*, on rehearing, 34
Mont. 160, 86 Pac. 32; *In re Wisner*, 36 Mont. 298, 92 Pac. 958.)
Chapter 81 of the Laws of 1871, above, was entitled ''Mines and
Prospectors.'' The statute made it a misdemeanor for anyone
to sink a shaft or run a drift or cut within twenty feet of a
trail, road or public highway, unless within ten days such
opening was protected by a substantial covering or fence. With
slight modifications, the statute was incorporated in the Com-
piled Statutes of 1887 (sec. 255, Fourth Division) under the
headnote, ''Leaving Open Shaft or Cut Within Twenty Feet
of Highway.'' Substantially the same statute was brought into
the Penal Code of 1895 (section 704), without title or head-
note. The sixth legislative assembly passed an Act entitled:
''An Act to amend section 704, in title X of part I, of the Penal
Code of  *  *  *  Montana, relating to exposed shafts, and
providing a penalty for failure to inclose and protect the same.''
(Laws 1899, p. 149.) This amendment extended the statute so
as to prohibit such open shafts, cuts and drifts within the limits
of any city, town or village, and increased the maximum pun-
ishment for its violation. Into the Revised Codes of 1907 the
statute, as amended in 1899, was brought forward under the
heading ''Protecting Mining Shafts in City.'' (Sec. 8535,
above.) In the Acts of 1871, 1887 and 1895, certain mining
and irrigating ditches were particularly excepted from the opera-
tion of the respective statutes. In the amendment of 1899,
mining, irrigating and other ditches, not more than ten feet
deep, were excepted, and such is the state of the law to-day.

Counsel for appellant contends that, by excepting mining, irrigating and other ditches not more than ten feet deep, the legislature must have intended that a ditch of any character more than ten feet deep was intended to be included within the prohibited list. But this argument if given effect would operate [2] to extend a highly penal statute by implication merely, in violation of the most elementary rule of statutory construction. (*In re Wisner,* above; 36 Cyc. 1186.) ''In order to enforce a penalty against a person, he must be brought clearly within both the spirit and letter of the statute.'' (36 Cyc. 1187.)

In every one of the Acts above mentioned, the only things prohibited are sinking a shaft or running a drift or cut. When the statute was first enacted, each of these terms had, and ever since has had, a well-defined and generally understood meaning. Each referred to an operation in mining, and to nothing else; at all times each has been a strictly mining term. In its broad [3] significance, the word ''cut'' may have a meaning other than that employed in mining; but when used in conjunction with ''shaft'' and ''drift'' it means a surface opening in the ground intersecting a vein. *''Copulatio verborum indicat acceptationem in eodem sensu.''* Our conclusion, from the history of section 8535 and the prohibitive language employed, is that it was never intended to apply to a ditch or trench temporarily opened for the purpose of laying sewer-pipe.

*Liability Under City Ordinance.* At the time this accident occurred there was in force an ordinance of the city of Butte [5] (No. 218) which declared it to be unlawful ''for any person or persons, company or corporation to permit or allow any shaft, drift, prospect hole *or other excavation* owned or controlled by them or it to remain open and unguarded by a proper covering of two-inch planks or a suitable fence at least four feet high and substantially constructed within the limit of the city of Butte, unless the same is properly guarded or patroled by one or more persons ''during the entire day and night.'' A fine of $100 might be imposed for a violation of this ordinance.

It is very clear that the sewer trench in question cannot be classified as a "shaft," "drift," or "prospect hole." Each of those terms has a well-defined and generally understood meaning in this state, and particularly in Butte, where mining is the principal industry. But it is insisted that the terms "or other excavation" are sufficiently broad to include the trench in question. If the prohibition of the ordinance was directed against any excavation being left unguarded, appellant's contention would prevail. But since the words "or other excavation" follow immediately after the specific enumeration "shafts," "drifts," "prospect holes," the rule of statutory construction exemplified by the expression *"ejusdem generis,"* or *"noscitur a sociis,"* requires the word "excavation" to be employed to mean some other opening in the ground of the same class of shafts, drifts and prospect holes. As applied to the ordinance in question, the rule requires the conclusion that it was the intention of the city council of Butte to use the terms "other excavation" as meaning, and to refer to, some other excavation made in the course of prospecting or active mining. (*City of Kalispell* v. *School District,* 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742; *Helena L. & Ry. Co.* v. *City of Helena,* 47 Mont. 18, 130 Pac. 446.) The record fails to disclose liability on the part of these respondents arising from any supposed violation of Ordinance 218.

*Common-law Liability.* Because of the extreme meagerness of this record and the absence therefrom of material facts which it is apparent could have been proved, we are required to treat this appellant, in the first instance, as a technical trespasser at the time of the accident and determine her rights, if any she has, accordingly. In the absence of any evidence as to the [6-9] ownership of the Dan Martin house, and other houses in that neighborhood accommodated by the path or roadway leading north from Anaconda Road, no inference of wrongful occupancy can be drawn. Martin's occupancy must be treated as rightful for the purposes of this case, if that is a material fact. (*Bourke* v. *Butte El. Ry. Co.,* 33 Mont. 267, 83 Pac. 470.)

The rule at common law imposed upon the land owner the duty only to refrain from any intention or wanton acts occasioning injury to a trespasser upon his property. (*Egan* v. *Montana Cent. Ry. Co.*, 24 Mont. 569, 63 Pac. 831; *Conway* v. *Monidah Trust*, 47 Mont. 269, 132 Pac. 26.) The exceptions to that rule are not material here. Since these defendants were in possession of the land at the place of injury and had an easement in the property, they are to be treated as the owners for the purposes of these appeals. That wantonness may be shown by acts of omission as well as by acts of commission, where the facts disclose a reckless disregard of the lives or safety of others, is a rule of law now generally recognized and was referred to approvingly by this court in *Driscoll* v. *Clark*, 32 Mont. 172, 80 Pac. 1, 373. There cannot be any rigid standard by which to determine whether wantonness in a given instance has been shown. Every case must depend upon its own peculiar facts and circumstances. It is the rule, repeated so often that it may fairly be said to have become axiomatic in the law of this state, [10] that, on appeal from a judgment rendered on a nonsuit, this court will consider the evidence in the view most favorable to the plaintiff and treat every fact as proved which the evidence tends to prove. Tested by that rule, the evidence discloses that the path or roadway, where the accident happened, was so plainly marked on the ground and had been subjected to such general and notorious use, and for such length of time, that the defendants knew of its existence and use, or, what amounts to the same thing, will be held chargeable with that knowledge. The facts, then, disclose uninclosed lands over [11] which the public (that is, the people of a considerable community or neighborhood) had been accustomed to pass for several years, until a well-defined path or roadway had become plainly marked upon the ground, and the owners of that ground excavating a dangerous trench into or across such path or roadway, and leaving the same uncovered, unguarded and unprotected for two or three weeks, without warning or notice of any kind or character, and with the knowledge that people accus-

tomed to use the path or roadway might reasonably be expected to use it under such circumstances that injury to them would result. If this does not make out a *prima facie* case of reckless disregard of the lives and safety of others, then it would be difficult to imagine a state of circumstances which would do so. The authorities bearing upon this subject, and cases presenting similar facts and declaring liability under them, are: 29 Cyc. 470; Wharton on Negligence, sec. 349; *Morrow* v. *Sweeney,* 10 Ind. App. 626, 38 N. E. 187; *Graves* v. *Thomas,* 95 Ind. 361, 48 Am. Rep. 727; *Penso* v. *McCormick,* 125 Ind. 116, 21 Am. St. Rep. 211, 9 L. R. A. 313, 25 N. E. 156; *Connally* v. *Woods,* 39 Okl. 186, 134 Pac. 869.

From the admitted facts, the evidence of plaintiff, and the fair inferences to be drawn therefrom, we conclude that a *prima facie* case, based upon the defendants' common-law liability, was made out, and that the trial court erred in sustaining the motion for nonsuit.

In what has preceded we have treated the plaintiff as a technical trespasser. It is an open question whether she was not shown to be a licensee (*Carskaddon* v. *Mills,* 5 Ind. App. 22, 31 N. E. 559), or present at the place of danger by the implied invitation of the defendants. (*De Tarr* v. *Heine Brewing Co.,* 62 Kan. 188, 61 Pac. 689.)

The judgment and order are reversed, and the cause is remanded for a new trial.

· *Reversed and .remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.