LILA N. DEAN, Plaintiff and Appellant, v. FIRST NATIONAL BANK OF GREAT FALLS, a corporation, Defendant and Respondent.

No. 11534.
Submitted Feb. 10, 1969.
Decided March 24, 1969.
452 P.2d 402.

Hoyt & Bottomly, Richard V. Bottomly (argued), Great Falls, for appellant.

Jardine, Stephenson, Blewett & Weaver, John D. Stephenson, Jr. (argued), Great Falls, for respondent.

MR. JUSTICE BONNER delivered the Opinion of the Court.

This is a personal injury action filed by plaintiff, Lila N. Dean, seeking damages as a result of tripping and falling on a carpet and allegedly sustaining serious injuries. Plaintiff claims the fall was caused by the alleged negligence of the defendant, First National Bank of Great Falls, a corporation, the landlord of plaintiff's employer, First Trust Company. Defendant moved for summary judgment on the grounds that the pleadings and depositions showed no genuine issue as to any material fact and the defendant was entitled to judgment as a matter of law. This motion was granted by the district judge and judgment for defendant was thereafter entered by the district court on July 26, 1968. From this judgment plaintiff appeals.

476

As far as we are concerned here, the pertinent paragraph of plaintiff's complaint alleges:

"That the carpet furnished by defendant to cover its floors as aforesaid was torn in the room where plaintiff had to work and was employed and in such a position that plaintiff was compelled to walk over the torn portion of the carpet daily in her work and employment with the First Trust Company and that although the defendant should have been aware of the tear in the carpet, which became worse over a period of time it failed and refused to repair the same with the result that plaintiff was caused to trip and fall on said tear, as a result of which she sustained serious injuries as hereinafter set forth."

The answer of defendant sets up two affirmative defenses; assumption of risk and contributory negligence on the part of plaintiff.

The plaintiff at the time of the accident was 36 years of age and the mother of two minor children.

The pertinent contents of the order granting summary judgment in favor of defendant sets forth generally the facts of this case:

"The above entitled cause having come before the Court on defendant's Motion for Summary Judgment, and the Court having considered the pleadings on file herein, the deposition of Charles Klaue, Assistant Vice-President of the First National Bank of Great Falls, the deposition of Lila Dean, and the Defendant's Answer to Plaintiff's Interrogatories, and the Court having read and considered the Briefs filed by counsel for the parties hereto, it appears to the Court from the undisputed facts and from the plaintiff's contentions, construed most favorably to her case, that:

"(1)    The First National Bank of Great Falls is a national banking association which owns an office building known as the First National Bank Building, in Great Falls (hereinafter referred to as 'the Bank').

" (2)   The First Trust Company of Montana is a corporation (hereinafter referred to as 'the Trust Company').

" (3)   At all times referred to in the Complaint the Bank leased certain office space on the fifth floor of its building to the Trust Company and the relationship of the Bank to the Trust Company was that of landlord and tenant.

" (4)   The floors of the office space leased to the Trust Company were covered with carpet which had been installed by and which was, at all times relevant herein, owned by the Bank. The Bank, through its custodial employees, provided janitorial and cleaning service to the Trust Company offices, and at all times relevant herein, the Bank purported to maintain the carpets in the Trust Company offices.

" (5)   Lila Dean was an employee of the Trust Company for an approximate ten-month period ending in July, 1966.

" (6)   Between the desk where Lila Dean worked and a filing cabinet which Mrs. Dean frequently used, was a seam in the carpet which over a period of time buckled and then separated. Lila Dean contends that this defect appeared shortly after she commenced her employment with First Trust Company, and that it continued to grow in size until the bulge and separation were approximately three feet long. The Defendant admits the existence of the defect in the rug and its location but does not fully agree with all of the contentions of Lila Dean concerning the nature of the defect. However, for purposes of determining this Motion, it is assumed that Lila Dean's contentions are true.

" (7)   Lila Dean contends that she frequently hooked the heel of her shoe upon the defect in the carpet during the course of her employment. She states that this occured on the average of at least once a day during her employment and sometimes as often as three or four times a day. On one occasion in May of 1966, Mrs. Dean states that she caught her heel on the defect in the carpet and pitched forward to her knees, causing a sharp spasm of pain across her low back

which extended to her right leg. She contends that this incident precipitated serious low back injuries which have required extensive surgical and medical attention. She also contends that the repeated tripping incidents prior to her fall in May of 1966 aggravated a pre-existing condition of generalized low back pain. The Defendant disputes the foregoing contentions of Lila Dean, but for purposes of this Motion, Lila Dean's contentions are deemed to be true as stated.

"It appears to the Court from the foregoing, that:

"(a) Lila Dean had actual knowledge of the defect in the carpet at all times pertinent hereto.

"(b) Lila Dean appreciated the condition of the carpet as dangerous.

"(c) Lila Dean voluntarily remained in the presence of the defect in the carpet for a period of several months.

"(d) Lila Dean's injuries allegedly resulted from the very defect which she knew, appreciated and alleges to be dangerous.

"The Court concludes that Lila Dean assumed the risk of her injuries as a matter of law and that she is barred from recovery herein by her assumption of the risk. The Court recognizes that there may be an issue of fact with respect to negligence on the part of the defendant, but rules that the issue of the Defendant's negligence is not a material issue of fact, because the Plaintiff is barred from recovery in any event. It appears therefore that there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law.

"The Defendant's Motion for Summary Judgment is hereby granted."

It is evident that the order granting summary judgment is founded solely on the defense that plaintiff assumed the risk and defendant's negligence was not a material issue of fact because plaintiff was barred from recovery in any event.

Two issues present themselves on this appeal, viz:

(1) Did the district court err in concluding that the plaintiff assumed the risk of her injuries as a matter of law and she is barred from recovery by her assumption of the risk?

(2) Did the district court err in concluding that the issue of defendant's negligence is not a material issue of fact, because the plaintiff is barred from recovery in any event?

We will now discuss whether or not the district court was or was not correct in concluding that plaintiff's action is barred by her assumption of risk.

In addition to the facts stated in the order, we find in the depositions and interrogatories other facts which we deem vital on this appeal. Two depositions were taken. One was by the assistant vice-president of the defendant, who was manager of the defendant's building, and the other by plaintiff. Also to be considered is defendant's answer to plaintiff's interrogatories.

The defendant had no interest in the business of plaintiff's employer. The businesses of the defendant landlord and its tenant were separate and distinct. The vice-president of the defendant who testified by deposition was in charge of the maintenance of the space leased by the defendant to the tenant. His obligation was to make certain that the premises were in "good shape" for the tenant and its employees. The defendant owned the carpet, had full control over it including the duty to keep it in repair, and knew that the carpet would be used by the employees and customers of the tenant.

Because the offices of the tenant were carpeted the defendant charged more rental than for other offices rented but uncarpeted.

The plaintiff resigned her position with the tenant on July 31, 1966.

The carpet in the offices of the tenant was laid in the fall of 1962. There is no evidence to show it had been repaired until August 31, 1966, or approximately three months after plaintiff resigned her position for the reason as expressed in her testi-

mony, "I was in such pain and misery I couldn't stand it, couldn't take it any longer." Plaintiff thereafter underwent surgery and was given medical attention which she alleges was necessary because of her tripping and falling on the carpet.

In giving a history of her tripping on the carpet she testified as follows:

"Q. Do you have any idea how many times you tripped on it? A. I can't tell you exactly.

"Q. More than ten times. A. Day after day, sometimes three or four times a day. * * *

"Q. You think you tripped on it soon after you came to work for the First Trust Company? A. Oh yes.

"Q. Am I correct in saying that in just one tripping instance you fell to the floor? A. To my knees, yes."

In describing how the accident happened plaintiff testified as follows:

"I was going to look for something in a file, I didn't think about the rip in the carpet, I got out of my chair, to walk to the file, caught my heel in the rip and went right down to my knee'. I grabbed for the file or something and twisted myself, it was like a whip pain down my back."

In relating her complaints against the defect in the rug, she testified:

"Q. When was the first time you complained about it? A. I don't remember, I was trying to push a file, I told Ray Strand (her superior) he better get it fixed.

"Q. Do you think you told Mr. Strand more than once? A. I think I did, I told Laura Quigley (a fellow employee of plaintiff) about it several times, Mr. Barr also, (an official of the tenant) everybody in the whole office knew about it."

Assumption of risk requires that four elements be proven by the defendant in order to establish assumption of risk by the plaintiff: (1) knowledge, actual or implied, of the particular condition; (2) appreciation of this condition as dangerous; (3) a voluntary remaining or continuing in the

face of the known dangerous conditions and (4) injury resulting as the usual and probable consequences of this dangerous condition. Hanson v. Colgrove 152 Mont., 161 447 P2d. 486.

The district court concluded that the plaintiff appreciated the condition of the carpet as dangerous; that her injuries allegedly resulted from the very defect which she knew, appreciated and alleged to be dangerous.

Contrary to this conclusion the complaint does not allege the defect in the carpet to be dangerous. The plaintiff did not testify that the defect in the carpet was dangerous. Defendant's only witness, Charles F. Klaue, the official of defendant in charge of the maintenance of defendant's building and the office where plaintiff worked, though admitting that he had the carpet "fixed" so "nobody" would fall on it did not consider the carpet dangerous as shown by his testimony, viz:

"Q. Do you only do repair work on the floors or carpeting of the office space when complaints are made? A. That is one way of finding out, yes.

"Q. And the others would be from your own visual inspections? A. Right.

"Q. How long was the buckling in the seam of the carpet in the room on the west side of the hall or corridor occupied by the First Trust Company that you had repaired? A. How long was it?

"Q. Did you consider that a bad situation? A. No.

"Q. Did you consider it so bad that a person would be foolhardy to walk on the carpet in that area?

"MR. STEPHENSON: I object to this form of questioning as argumentative. You may answer the question, Mr. Klaue. A. I don't.

"Q. You didn't consider it to be a dangerous condition? A. I didn't consider it such, no.

"Q. Did you consider it unreasonable, then, for the employees of the First Trust Company to work in the room where the carpet was buckled at the seam where you had it repaired?

"MR. STEPHENSON: I object to this form of question on the grounds that it is argumentative. Once again you may answer. A. No.

"Q. Do you think that any of the employees should have quit rather than work in the rooms where these bucklings in the carpet were?

"MR. STEPHENSON: I have the same objection to the form of this question. You may answer. A. No."

To begin with, evidence adduced in this case thus far plainly shows that plaintiff was a business invitee of defendant and as such it was the duty of the defendant to maintain the premises in a reasonably safe condition, or to warn the invitee of any hidden or lurking danger therein (Suhr v. Sears Roebuck and Company, 152 Mont. 344, 450 P.2d 87); on the other hand in order to recover the plaintiff must show whether she acted as a reasonably prudent person would act under the circumstances. D'Hooge v. McCann, 151 Mont. 353, 443, P.2d 747. Whether defendant and plaintiff so acted is a question of fact to be decided by the jury and not a question of law for the Court.

In the present state of the record here, can we say the tear, rip or bulge of the carpet was so obviously dangerous that plaintiff assumed the risk of injury by walking over it? The evidence in this regard is conflicting and this is a question of fact to be decided by a jury even though plaintiff had actual knowledge of the particular condition of the carpet.

It is our opinion that the court erred in concluding plaintiff, as a matter of law, assumed the risk of her injuries and she is therefore barred from recovery by her assumption of said risk.

We will now discuss the second issue on this appeal,—did the district court err in concluding that the issue of defendant's negligence is not a material issue of fact, because the plaintiff is barred from recovery in any event?

Further, the district court recognized there may be an issue of fact with regard to the negligence of defendant, but then

ruled this out as not a material issue of fact because ''the plaintiff is barred from recovery in any event.'' This conclusion can only mean that though the defendant be negligent the plaintiff is barred from recovery in any event because plaintiff unquestionably assumed the risk.

It would be but repetition to set forth again the facts of this case relating to negligence since we did so in discussing the first issue presented on this appeal—the assumption of risk.

■ ''Summary judgment procedure is not a substitute for the trial of disputed issues of fact. * * *

■ ''On a motion for summary judgment the court cannot try issues of fact. It can only determine whether these are issues to be tried. * * *'' 3 Barron and Holtzoff, § 1231, p. 101.

■ ''Summary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting tstimony, as it is in other kinds of litigation. A study made in one district showed that in 292 negligence cases pending in a particular year, only one motion for summary judgment was made and that was denied.'' 3 Barron & Holtzoff, § 1232.1, p. 106.

■ Where, as here, we are beset with substantial conflicting evidence it is for the jury to decide, under appropriate instructions, the issue of whether there has been a negligent breach of a legal duty; that negligence and breach of duty are for the court to decide only if the evidence is undisputed or susceptible of but one conclusion by reasonable men. Suhr v. Sears Roebuck & Co., supra.

For these reasons the district court incorrectly held that defendant's negligence was not a material issue of fact.

For the reasons stated under the facts of this case the summary judgment is reversed and the cause remanded to the district court for further proceedings in accordance with the views herein expressed.

484

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE JOHN C. HARRISON, concur.

MR. JUSTICE HASWELL (especially concurring):

I concur in the result reached by the majority on an additional and different basis.

In my view, the defense of implied assumption of risk is bottomed on consent. Restatement, Second, Torts § 496A, Comment b and § 496C, Comment b; Prosser, Law of Torts, 3rd Ed., page 450 et seq. It is founded on the principle that he who consents to an act will not be heard to claim that he is wronged by it. Osterholm v. Boston, etc., Min. Co., 40 Mont. 508, 107 P. 499; Fotheringill v. Washoe Copper Co., 43 Mont. 485, 117 P. 86.

An indispensable element of the defense of implied assumption of risk is a voluntary remaining or continuing in the face of the known dangerous condition. Hanson v. Colgrove, 152 Mont. 161, 447 P.2d 486; D'Hooge v. McCann, 151 Mont. 353, 443 P.2d 747; Wollan v. Lord, 142 Mont. 498, 385 P.2d 102. A plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to exercise a right or privilege of which the defendant had no right to deprive him. Restatement, Second, Torts § 496E, Comment c; Prosser, Law of Torts, 3rd Ed., page 467. Thus where an employee of a tenant renting office space on the mezzanine of a hotel slips and falls descending a stairway having slick terrazzo steps, she cannot be said to have voluntarily assumed the risk so as to bar her recovery against the hotel owner because the latter's conduct required her to undergo a risk to protect her right of employment. Seelbach, Inc. v. Mellman, 293 Ky. 790, 170 S.W.2d 18.

In the instant case, plaintiff's complaint alleges that the torn carpet was "in the room where plaintiff had to work and was employed" and that the torn carpet was "in such a posi-

tion that plaintiff was compelled to walk over the torn portion of the carpet daily in her work and employment." Plaintiff's testimony in her deposition concerning the physical layout of the premises tends to support this. In my view, this poses a jury question as to the voluntary character of plaintiff's consent or willingness to accept the risk in question, precluding the granting of summary judgment.

MR. JUSTICE CASTLES (dissenting):

I dissent. The plaintiff's own version is that, "I was a constant complainer about it." That she tripped over the carpet, "Day after day, sometimes three or four times a day." Plaintiff's own evidence is that (1) she knew, (2) she appreciated the danger, (3) she voluntarily continued and (4) her present back difficulties are alleged to be the result of the very condition she knew and appreciated.

One of the elements argued by appellant is whether plaintiff appreciated the danger. Appreciation of the danger of course requires a subjective rather than an objective approach, and plaintiff's testimony fully demonstrates her subjective understanding of the risks and hazards of the torn seam. Plaintiff had had back trouble and pain before she came to work. She had had a hysterectomy in 1964 about two months after going to work and has had trouble since. She admits that when she left her employment "I was sick all over, I thought I had a kidney infection, it was making me sick all over." She also said, "I had back and leg pain, I was a complete nervous wreck, I couldn't sleep at night."

Plaintiff did not tell anyone she was leaving. She took a "leave of absence" and went home and stayed with her parents. Prior to her alleged fall, she consulted various doctors about the pain in her back. Apparently she had been to various chiropractors prior to the alleged fall. This, mind you, is her own testimony. Then, she wrote a letter resigning.

Under the facts here, the district court was correct, plaintiff did assume the risk of her alleged injuries as a matter of law. Additionally, she was contributorily negligent by her own statements. The majority opinion sets aside the summary judgment so the serious factual and medical questions as to causation of the alleged injuries will be gone into. I believe the majority is in error and thus I dissent.