No. 80-265

IN THE SUPREME COURT OF THE STATE OF MONTNAA

1981

LOIS JEFFERSON BIG MAN, Personally and
as Personal Representative of the
Estate of Daniel Big Man, Deceased,

Plaintiff and Appellant,

vs.

THE STATE OF MONTANA, and
EUNICE IRENE CASE,

Defendants and Respondents.

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Big Horn.
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Holmstrom, Dunaway & West, Billings, Montana
Jock B.West argued, Billings, Montana

For Respondents:

Moulton, Bellingham, Longo and Mather, Billings, Montana
Corinne Courtney argued, Billings, Montana

Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
Montana
Cynthia Ford argued, Billings, Montana

Submitted:  January 15, 1981

Decided:  MAR 1 0 1981

Filed:  MAR 1 0 1981

_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a summary judgment entered against the plaintiff in favor of both defendants by the District Court of the Thirteenth Judicial District, in and for the County of Big Horn.

Daniel Big Man, a five-year-old pedestrian, was struck by a car driven by Eunice Case. The accident occurred on or near the south end of a bridge that crosses the Little Big Horn River, 18 miles south of Hardin, Montana, on Interstate 90 (I-90). The site of the accident abuts a "swimming hole" frequently used by children in the area. The children had access to the swimming hole through an opening in a fence which runs from the interstate boundary fence to a concrete abutment located at the south end of the bridge. Daniel died as a result of the injuries sustained in the accident.

Plaintiff brought suit against the State of Montana for negligence in the construction and maintenance of the highway fence and against Eunice Case for negligence in the operation of her vehicle. Defendants contend that Daniel darted from behind the bridge abutment so quickly that Case could not avoid hitting him.

After some discovery was pursued, defendants moved for summary judgment. The court granted judgment in their favor.

Plaintiff presents the following issues to this Court for review:

1. Did the District Court err in finding no genuine issue as to any material fact and thereby err in granting the summary judgment?

2. Did the state have a legal duty to erect and maintain the fence along the interstate where the accident occurred so as to prevent access by pedestrians?

A party moving for summary judgment has the burden of showing the complete absence of any genuine issue as to all facts which are deemed material in light of those principles which

entitle him to a judgment as a matter of law. Reaves v. Reinbold (1980), ____Mont.____, 615 P.2d 896, 37 St.Rep. 1500; Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613.

As to defendant Case, the plaintiff contends there are issues of fact yet to be resolved. Case concedes that the submitted record reveals that there are genuine issues of fact but contends that they are not material in light of those principles which entitle her to a judgment as a matter of law.

The District Court could properly grant summary judgment to Case only on a finding that, on the submitted record, she exercised proper due care in proceeding down the highway and was unable to avoid the collision with the decedent.

In support of this finding, Case presented her own affidavit and the affidavit of her husband, Clarence Case, who was a passenger in the car at the time of the accident. These affidavits established the following facts:

1. The accident occurred at 2:30 p.m. in the southbound lane of a limited access four-lane interstate highway. The speed limit was 55 miles per hour.

2. Eunice Case was driving at approximately 40 miles per hour.

3. The decedent was first seen by Clarence Case, a passenger in defendant's car, as they approached the south end of the bridge.

4. The decedent darted from behind a three-foot-high bridge abutment on the righthand side of the roadway directly into the highway.

5. The decedent appeared approximately three feet from the bridge abutment.

6. The decedent tried to stop, but ran into the right front fender of the vehicle.

7. The decedent appeared and ran into the side of the car without warning and without time for the defendant to take any action to avoid the collision.

8. The decedent was the only child who ran out from behind the bridge abutment at the time of the accident.

In response to Case's allegations, plaintiff presented affidavits which established that at the time of the accident, there were other children on the bridge or standing on the interstate roadbed near the highway. The affidavits also indicated that the point of impact appeared to be 21.1 feet from the end of the bridge abutment.

Issues of fact in dispute include whether there were other children on the bridge or roadway at the time of the accident; whether the point of impact was 3 feet or 21 feet from the end of the bridge abutment and whether Case's vehicle was traveling at a reasonable rate of speed. These facts being in dispute, the issue becomes whether they are material to a final determination in this matter and, thus, preclude any summary judgment.

Section 61-8-504, MCA, provides:

" . . . every driver shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child . . . upon a roadway."

If children were present on the bridge or standing on the roadbed and readily visible to Case, she was under a duty to exercise precaution to avoid any collision and to sound her horn when such action became necessary.

Case failed to make use of her horn as she approached the bridge but still contends she exercised due care in driving her car. Case then concludes that the fact that children may have been on the bridge or roadbed adjacent to the interstate is of no concern for the collision with the decedent stil remained unavoidable.

In support of this position, defendant cites Autio v. Miller (1932), 92 Mont. 150, 11 P.2d 1039, for the following proposition:

"While the driver of an automobile is required to be vigilant, he is not bound to anticipate

> that a child will suddenly dart from the side of
> the street or suddenly run across the street, in
> front of his car." 11 P.2d at 1042.

See also Annot., 65 A.L.R. 192 (1930); Annot., 113 A.L.R. 528 (1938); 60A C.J.S. Motor Vehicles, § 396(2) at 777.

It should be noted, however, that the court in Autio also stated that if the driver of an automobile "is not vigilant, if he does not keep a lookout, the jury may say he was negligent." In providing a lookout, the court indicated that the "driver must look 'not only straight ahead, but laterally ahead'" and that a "person is presumed to see that which he could see by looking."

In viewing the presented affidavits and the inferences arising therefrom, in a light most favorable to the party opposing the motion for summary judgment, this Court must acknowledge that children were present on the bridge or roadway and readily viewable by the defendant. Children being present, Case was under a duty to exercise all proper precaution to avoid any collision.

A determination of negligence is always dependent upon an examination of the surrounding circumstances. McCusker v. Roberts (1969), 152 Mont. 513, 452 P.2d 408; Jackson v. William Dingwall Co. (1965), 145 Mont. 127, 399 P.2d 236. The submitted record fails to fully describe the location and actions of the children but affording the plaintiff all reasonable inferences which may be drawn from the offered proof, it could be found upon further examination at trial that a failure to sound the car horn and/or reduce the car's speed to less than 40 miles per hour was in violation of a duty of reasonable care and precaution. This being the case, the trial court improperly granted Case a summary judgment.

As to the disputed fact of whether the collision occurred 3 or 21 feet from the bridge abutment, this controversy bears on the issue of whether Case had time to avoid the decedent as he ran onto the highway. Plaintiff submits that, if the decedent was 21.1 feet down the road from the bridge, Case in the exer-

- 5 -

cise of due care would have been able to see him prior to impact and thereby avoid the accident.

There appears to be no dispute that the decedent darted suddenly out into the roadway from underneath the bridge and from behind a bridge abutment. The dispute is whether the defendant was 3.0 feet or 21.1 feet from the bridge when he appeared in the view of defendant.

The discrepancy in this instance is 18.1 feet, but the defendant contends it is of little significance in that when traveling at a speed of 40 miles per hour, this distance is covered in less than a second. What defendant fails to acknowledge, however, is that under the given circumstances, 40 miles per hour may have been excessive and had she been driving at a more reasonable speed the distance could have allowed adequate time to avoid the collision.

In viewing the evidence and inferences arising therefrom in a light most favorable to the plaintiff, we are not able to conclude, as a matter of law, that defendant properly exercised her duty. Consequently, the summary judgment was improperly granted.

This determination agrees with this Court's holding that ordinarily issues of negligence are not susceptible of summary adjudication. Hogen v. Great Northern Railway Co. (1969), 153 Mont. 309, 456 P.2d 51. It is felt that the Court should be extremely cautious in reviewing grants of summary judgment in this area for the issues involved in a determination of negligence are better resolved at trial. McAlpine v. Dahl (1978), ____ Mont.____, 585 P.2d 1307, 35 St.Rep. 1561; see also Lyndes v. Scofield (1979), ____Mont.____, 589 P.2d 1000, 36 St.Rep. 185; Slagsvold v. Johnson (1975), 168 Mont. 490, 544 P.2d 442; Dean v. First National Bank of Great Falls (1969), 152 Mont. 474, 452 P.2d 402.

In regard to the second issue on appeal the plaintiff contends that an issue of fact yet to be resolved is whether the

State of Montana as a defendant failed to properly upkeep the fence extending from the interstate boundary fence to the brige abutment. The State submits that the fact the fence may have been in disrepair is of no concern in this matter for the State is under no legal duty to erect or maintain the fence.

To support her argument that the State has a duty of maintenance, plaintiff cites section 60-5-105, MCA. This section reads:

> "Each highway authority may so design any controlled access facility and so regulate, restrict, or prohibit access as to best serve the traffic for which the facility is intended. In doing so, it may divide and separate any controlled access facility into separate roadways by the construction of raised curbings, central dividing sections, or other physical separations or by designating a separate roadway by signs, markers, stripes and other devices."

Upon reading this section in conjunction with State v. District Court of the Fourteenth Judicial District (1977), 175 Mont. 63, 572 P.2d 201, plaintiff concludes that once the State has chosen a method of regulating, restricting and prohibiting access to a highway (i.e., by means of a fence) it is liable for any negligent maintenance of such device.

We fail to find any requirement contained in section 60-5-105, MCA, that the State has a legal duty to erect a fence to prevent access by pedestrians to a controlled access highway. The statute specifically states that the highway authority may (not shall) restrict or prohibit access.

Furthermore, we fail to see that the State of Montana can be held liable for the negligent maintenance of a fence it had no duty to erect based upon the decision rendered in State v. District Court, supra. In that case, two issues were presented for review:

> "(1) May the State maintain a defense of sovereign immunity against claims arising from death?
>
> "(2) May the State maintain a defense of 'financial feasibility or discretion' in a highway injury or death case?" 572 P.2d at 202.

Neither of these issues are in controversy in the case at hand.

This Court in State, in discussing the second issue on review, did indicate that "whenever and wherever it [the State] chooses to build highways it assumes the duty of maintaining them safely and is answerable if it fails to do so." This statement, however, was directed at a duty owed to a motorist, not a pedestrian, and was made solely in conjunction with a finding that the State cannot avoid a claim of negligence on a defense of financial feasibility or discretion--matters not in issue in this proceeding. See State, 572 P.2d at 203. State should not be deemed controlling in this proceeding. (The same analysis is true for Modrell v. State (1978), ____Mont.____, 587 P.2d 405, 35 St.Rep. 1811, cited by plaintiff.)

Plaintiff also argues that since the State of Montana knew, or should have known, that children in the area swam in the river directly below the bridge where the accident occurred, the State was under a duty to erect and maintain a fence to prevent those children from gaining access to the highway.

In making this argument plaintiff first relies upon a policy declaration concerning the legislature's purpose in controlling access on certain designated highways. See section 60-5-101, MCA. The policy of the State in this regard is to facilitate the flow of traffic and the promotion of public safety.

This Court acknowledges the policy statement but disagrees with the conclusion offered by plaintiff. The initial purpose of the statute is to facilitate the flow of traffic on highways which have been designated for use solely by through traffic. (See section 60-5-102(2), MCA, for the definition of controlled-access highway.) It is evident that the flow of traffic in this regard refers solely to motor vehicle and not pedestrian traffic as submitted by plaintiff.

The additional purpose of the legislation is to promote public safety and arguably this includes the promotion of pedestrial safety. We are, however, unwilling to find that this

- 8 -

promotion also includes a statutory duty, on the part of the State, to protect pedestrians by preventing access to a controlled-access highway by erecting and maintaining a fence. It should not be said that the legislature, in declaring a policy for controlling access to designated highways, intended that the State be required to assure pedestrian safety by enclosing our highways with a physical obstruction so as to prevent a pedestrian's intentional entrance upon the roadway. Such a conclusion is untenable.

In final support of the contention for imposing liability on the State for failing to maintain a fence in an area known to be frequented by children, plaintiff asserts the doctrine of attractive nuisance. See Gagnier V. Curran Construction Co. (1968), 151 Mont. 468, 443 P.2d 894; Molohon v. United States (D. Mont. 1962), 206 F.Supp. 388; Johnson v. United States (9th Cir. 1959), 270 F.2d 488, cert. denied, 362 U.S. 924, 80 S.Ct. 677, 4 L.Ed.2d 742; Driscoll v. Clark (1905), 32 Mont. 172, 80 P. 1.

This Court has not decided, however, whether a highway, as an artificial condition, is such that the doctrine is deemed applicable when a child is killed or injured thereon. Nor have we been able to find a case dealing with such an application in other jurisdictions.

The elements needed to support a finding of liability under a theory of attractive nuisance include: (1) an artificial condition maintained by the possessor of land in a place which the possessor knows or should know that children are likely to trespass; (2) the condition involves an unreasonable risk of death or serious bodily harm; (3) children because of their youth will be unable to discover the condition or realize the danger; (4) the utility of maintaining the condition is slight compared to the risk it presents to young children; (5) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children. See Restatement of Torts 2d, § 339; Gagnier, supra.

- 9 -

An interstate highway most certainly constitutes an artificial condition, but we are unable to find anything in the record that a five-year-old child would not be able to discover it nor be able to appreciate the dangers involved when walking thereon. In a society where cars, streets and highways are commonplace, a child from the minute he is able to walk is constantly reminded that one should be extremely careful of roadways. Consequently, by the time a child is five years of age, it may be he has grown to appreciate and fear the risks a highway presents to a pedestrian.

Plaintiff failed to establish a legal duty on the State to erect or maintain the fence at issue. We affirm the summary judgment granted in favor of the State of Montana. Since material issues of fact have yet to be resolved concerning the propriety of defendant Case's driving behavior and the distance from the bridge abutment of the impact, the summary judgment in defendant Case's favor is vacated and the cause remanded for further proceedings.

_____
Justice

We concur:

_____

_____

_____
Justice Frank B. Morrison,
sitting in place of Mr. Chief
Justice Frank I. Haswell.

Mr. Justice Daniel J. Shea concurring:

I agree with the decision of this Court affirming the grant of summary judgment to the defendant State of Montana, but reversing the grant of summary judgment to the defendant, Eunice Irene Case. Nonetheless, I must express my disapproval of the way the trial court handled and granted both motions for summary judgment. There is absolutely no way from the record that we can tell why the trial court ruled in the way it did. We should be able to tell from the trial court order or accompanying memorandum precisely why the trial court considered there to be no genuine issue of fact. It has always seemed to be that if parties are to be thrown out of court they are entitled to know why.

The Canons of Judicial Ethics require that trial judges, in disposing of controverted cases, set out the reasons for their decisions. The first paragraph of Canon 19 (144 Mont. at xxvi-xxvii) states in unequivocal language:

> "In disposing of controverted cases, a judge
> should indicate the reasons for his action in
> an opinion showing that he has not disregarded
> or overlooked serious arguments of counsel. He
> thus shows his full understanding of the case,
> avoids the suspicion of arbitrary conclusion,
> promotes confidence in his intellectual integrity
> and may contribute useful precedent to the
> growth of the law."

The order of the trial judge granting summary judgment to both defendants fails to measure up to this mandate. The order states in pertinent part:

> "WHEREAS, the Court having received written
> memorandums on behalf of the Plaintiff and
> the respective Defendants, and the Court
> having duly considered the same,
>
> "NOW, THEREFORE, IT IS ORDERED that Motion
> for Summary Judgment of Defendant State of
> Montana is hereby GRANTED,
>
> "IT IS FURTHER ORDERED that Motion for Summary
> Judgment of Defendant Eunice Irene Case is hereby
> GRANTED."

-11-

That is it--absolutely no analysis of why there is no genuine issue of material fact. Nor is there an accompanying memorandum setting out an analysis.

In Ballantyne v. Anaconda Co. (1978), 175 Mont. 406, 574 P.2d 582, this Court quoted from The State Trial Judge's Book published by the West Publishing Company. 175 Mont. at 409, 574 P.2d at 584. This language sets out in no uncertain terms why trial judges should explain the reasons for their decisions.

One paragraph of The State Trial Judge's Book, quoted in Ballantyne, is particularly apt here:

> "'The function of an opinion is to state the reason which led the court to decide the case the way it did. Moreover, since in the process of preparing an opinion the judge must discipline his thinking, he is more apt to reach a just decision in a complex case if he reduces his reasoning to writing. Referring to the fruitful effect of the process, Chief Justice Hughes once commented, "The importance of written opinions as a protection against judicial carelessness is very great."'" 175 Mont. at 409, 574 P.2d at 584.

If the trial court would have mulled the case over and entered a written decision explaining why it granted summary judgment, it might, in the process of reaching that decision, have recognized the basic error in granting summary judgment. Obviously, the existence or nonexistence of children on the bridge would markedly change the duty of the defendant-driver to slow down as she was approaching the bridge. That basic fact is in dispute.

A jury issue is manifestly involved here. On trial, had the jury believed there were no children on the bridge, it might well conclude that the defendant-driver did not exercise reasonable care in approaching the bridge and that this lack of care caused the death of the child. On the other hand, if the jury concluded there were no children on the bridge, it could conclude that the driver exercised reasonable care in approaching the bridge.

-12-

A careful analysis of the case would suggest a strong likelihood that the trial court would realize the error in granting summary judgment to the defendant-driver. The disputed facts were clearly pointed out to the trial court in the plaintiff's memorandum opposing the grant of summary judgment. That brief, after pointing out that the affidavits of defendant's witnesses that there were no children on the bridge, were flatly contradicted by affidavits of plaintiff's witnesses that there were children on the bridge, stated:

> "If the facts are as stated in the Affidavit submitted by the plaintiff, the question of fact which must be resolved is whether or not the defendant Eunice Irene Case exercised due care in proceeding down the highway knowing children were on or near the highway and whether or not she was negligent in not seeing the decedent although he was 20 feet down the road from the bridge abutment." (Plaintiff's Memorandum to the Trial Court at page 2.)

The trial court therefore, cannot claim that the existence of such genuine issues of material fact were not pointed out to the court by plaintiff's counsel. If the trial court found that the existence or nonexistence of children on the highway was not a material fact, the duty would then be imposed on the trial court to explain why the presence or absence of children on the bridge would not alter the right of the defendant-driver to summary judgment on the liability issue.

I would urge the trial courts to heed the mandate of Canon 19. But even were the Canon not there, the reasons, as pointed out in <u>Ballantyne</u>, supra, are just as compelling for a requirement that the trial courts spread upon the record the reasons for their decisions.

_____
                          Justice

I concur with the foregoing concurring opinion.

_____
                          Justice

-13-