765 F.2d 1464
 Virginia HARMON, individually and as personal representative
of the Estate of Brandon Scott Harmon, a deceased
minor, Plaintiff-Appellant,
v.
The BILLINGS BENCH WATER USERS ASSOCIATION and the City of
Billings, Defendants-Appellees.
 No. 84-4136.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1985.
Decided July 19, 1985.
As Amended on Denial of Rehearing Aug. 28, 1985.
 
 Donald W. Molloy, Anderson, Edwards & Molloy, Billings, Mont., for plaintiff-appellant.
 Steven Harmon, Anderson Law Firm, Billings, Mont., for defendants-appellees.
 Appeal from the United States District Court for the District of Montana.
 Before HUG, FARRIS and BOOCHEVER, Circuit Judges.
 FARRIS, Circuit Judge:
 
 OVERVIEW
 
 1
 On May 7, 1980, Virginia Harmon's five-year-old son drowned in an irrigation ditch running through the city of Billings, Montana that is owned and maintained by the Billings Bench Water Users Association. Acting both individually and as the personal representative of her son's estate, Harmon filed this wrongful death and survivorship action against the city and the Association. All three parties moved for summary judgment. The district court denied Harmon's motion and granted both defendants' motions for summary judgment. Harmon appeals only from the summary judgment entered in favor of the Association, contending that the district court erred by deciding a number of disputed issues of material fact without trial.
 
 
 2
 Jurisdiction in the district court was based upon diversity of citizenship. 28 U.S.C. Sec. 1332(a). We have jurisdiction over the appeal pursuant to 28 U.S.C. Sec. 1291. Montana law governs the instant action.
 
 STANDARDS OF REVIEW
 
 3
 "The granting of a summary judgment is reviewable de novo." Haluapo v. Akashi Kaiun, K.K., 748 F.2d 1363, 1364 (9th Cir.1984). "In reviewing a grant of summary judgment, our task is identical to that of the district court. The district court's grant of summary judgment will be affirmed if, viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion for summary judgment, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." RFD Publications, Inc. v. Oregonian Pub. Co., 749 F.2d 1327, 1328 (9th Cir.1984).
 
 DISCUSSION
 
 4
 Harmon alleged four distinct theories of liability: nuisance, attractive nuisance, negligence, and strict liability. It appears from the face of her complaint, however, that her nuisance allegations were directed only toward the City of Billings, and on appeal, she has not contested the district court's rejection of her nuisance claim.
 
 I. Attractive Nuisance
 
 5
 The Supreme Court of Montana has adopted the formulation of the attractive nuisance doctrine found in section 339 of the Restatement (Second) of Torts. Under Montana law,
 
 
 6
 [t]he elements needed to support a finding of liability under a theory of attractive nuisance include: (1) an artificial condition maintained by the possessor of land in a place which the possessor knows or should know that children are likely to trespass; (2) the condition involves an unreasonable risk of death or serious bodily harm; (3) children because of their youth will be unable to discover the condition or realize the danger; (4) the utility of maintaining the condition is slight compared to the risk it presents to young children; (5) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children.
 
 
 7
 Big Man v. State, 626 P.2d 235, 240 (Mont.1981). The court has implied that whether or not these elements are present ordinarily "is a question of fact for the jury to determine." Mascarena v. Booth, 174 Mont. 11, 568 P.2d 182, 185 (1977). In Big Man, however, the court affirmed the granting of summary judgment in favor of the State on the plaintiff's attractive nuisance claim. The plaintiff alleged that the State's negligent failure to maintain a fence near a highway bridge that crossed a well-known swimming hole had caused the death of her five-year-old son, who had crawled through a hole in the fence and been struck by a car while attempting to cross the highway near the bridge. The court held that the third element of the attractive nuisance doctrine was not present because it was "unable to find anything in the record [indicating] that a five-year-old child would not be able to discover [the highway] nor be able to appreciate the dangers involved when walking thereon." Id. 626 P.2d at 240. In so holding, the court apparently applied the principle announced in comment j to section 339, which states that "in the absence of some factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible," the attractive nuisance doctrine is inapplicable to "dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large." Restatement (Second) of Torts Sec. 339 comment j (1965).
 
 
 8
 At oral argument, the Association conceded that in the appropriate circumstances, the attractive nuisance doctrine as defined by Montana law would apply to an irrigation ditch. See Fusselman v. Yellowstone Valley Land & Irrigation Co., 53 Mont. 254, 163 P. 473 (1917) (implying that attractive nuisance doctrine is applicable to irrigation ditches under Montana law if doctrine is properly pleaded). See also Troglia v. Butte Superior Mining Co., 270 F. 75, 76 (9th Cir.1921) (attractive nuisance doctrine does not apply to artificial pond "unless there is in the pool some peculiar danger, in the nature of a hidden peril or a trap for the unwary, of which [the owner] has or ought to have knowledge"); Coeur d'Alene Lumber Co. v. Thompson, 215 F. 8 (9th Cir.1914) (where sawdust floating on top of water and water's muddiness might have prevented seven-year-old boy from perceiving that rim of shallow water dropped off abruptly into a well, district court did not err in allowing plaintiff's negligence claim to go to the jury).[1] It contends, however, that the evidence in the record was insufficient as a matter of law to establish the third and fourth elements of the attractive nuisance doctrine set forth in Big Man. With respect to the third element, the district court emphasized that the irrigation ditch was easily discoverable by a five-year-old child and that Harmon had testified on deposition that she had warned her son not to go near the ditch and that she believed that he understood that he could drown in the ditch because he was so afraid of water that he would not get his face wet in the bathtub. The court found that Harmon could not prove the fourth element of the doctrine because "the utility of the irrigation ditch is great [and t]o erect a safety device such as a child-proof fence along the course of the ditch would be an oppressive burden upon the [Association]."
 
 
 9
 The record indicates, however, that there is a genuine issue of material fact as to whether the ditch might have presented a hidden danger that Harmon's son did not appreciate. The mother of the boy with whom Harmon's son was playing at the time of the accident testified on deposition that shortly after the accident, her son told her that Harmon's son had fallen into the water when he attempted to retrieve a stick he had dropped into the water. She further testified that the concrete sides of the ditch were much steeper than the natural bank they adjoined and that on the day in question, the water was above the concrete sides. These facts are similar to those presented in Thompson and if established would put the instant case within the hidden danger exception to the general rule stated in comment j to section 339 of the Restatement. Nothing in the record indicates that Harmon's son was aware of the presence of the concrete sides or of their steep grade at the time he fell into the ditch. He might have appreciated the danger of drowning if he fell into the ditch, but he might not have been able to perceive that stepping into the water created a danger of falling into the ditch. Cf. Howard v. Atlantic Coast Line R.R. Co., 231 F.2d 592, 594 (5th Cir.1956) ("the straight sides of an artificial body of water do not constitute a hidden danger, within the meaning of the Florida [attractive nuisance] rule").
 
 
 10
 The district court's focus also was misplaced with respect to the fourth element. Even if the court could apply the balancing test as a matter of law, a child-proof fence is not the only safety precaution that might have prevented the accident in question. Regardless of whether or not a fence that would keep all children of all ages away from the ditch is feasible, the question remains whether or not a properly constructed fence would have prevented the accident in question. The testimony of the playmate's mother reveals that the death of Harmon's son might have been averted by keeping the water level below the top of the steeply sloping concrete sides, an alternative that seemingly would be less costly than a child-proof fence and that might not diminish the utility of the ditch substantially.[2] 2] Other evidence indicates that the Association considered pumping the water around (or under) the city of Billings or enclosing the portion of the ditch running through the city in a culvert, but that these proposals were "never finalized." The district court said nothing about the relative costs and benefits of these proposed projects in its opinion.
 
 
 11
 Upon this record, the district court erred in ruling as a matter of law that Harmon's son fully appreciated all of the dangers presented by the ditch and that the burden of eliminating the danger was not slight compared to the risk it presented to young children. See Gagnier v. Curran Constr. Co., 151 Mont. 468, 443 P.2d 894, 900 (1968) (where ten-year old child of above average intelligence who had been warned by her parents not to play near construction sites or excavations was killed in collapse of clay bank at excavation site, court held that "[w]hile such hazards are the type which should be known by children to be dangerous the fact question of whether or not this particular child should have realized the danger was for the jury to decide"); Mascarena, 568 P.2d at 185-86 (whether burden to defendants of procuring protective devices was slight as compared to risk of injury to children was disputed issue of material fact precluding summary judgment). It was error to grant summary judgment in favor of the Association on Harmon's attractive nuisance claim.
 
 II. Negligence
 
 12
 Even if Harmon could not satisfy all of the elements of the attractive nuisance doctrine, making the Association's duty to Harmon's son the duty to refrain from willful and wanton negligence,[3] a disputed issue of material fact would remain. The district court summarily rejected Harmon's negligence claim because she had neither alleged nor presented any evidence of willful and wanton negligence. Harmon alleged that the Association's negligence in constructing and maintaining the ditch had caused her son's death. Under Rule 8(a) of the Federal Rules of Civil Procedure, "[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." American Timber & Trading Co. v. First Nat'l Bank of Oregon, 690 F.2d 781, 786 (9th Cir.1982). Harmon's complaint adequately informed the Association that its construction and maintenance of the ditch within the Billings city limits was at issue, and that she claimed that the Association's acts and omissions violated its duty of care to her son. Applying the rule that the complaint must be construed liberally, id., Harmon's failure to characterize the Association's negligence as "willful and wanton" in her complaint does not defeat her negligence claim.
 
 
 13
 Under Montana law, "wantonness may be shown by acts of omission as well as by acts of commission, where the facts disclose a reckless disregard of the lives or safety of others." McLaughlin v. Bardsen, 50 Mont. 177, 145 P. 954, 956 (1915). "A defendant's act is properly characterized as willful, wanton, or reckless ... only when it was apparent, or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the [injured party], and he acted with such indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetrate it." Hannigan v. Northern Pac. Ry. Co., 142 Mont. 335, 384 P.2d 493, 499 (1963) (quoting Le Compte v. Wardell, 134 Mont. 490, 333 P.2d 1028, 1030 (1958) (quoting 38 Am.Jur. Negligence Sec. 178, at 855-56) ). "An intent to injure is not a necessary element of reckless and wanton misconduct." Mallory v. Cloud, 167 Mont. 115, 535 P.2d 1270, 1271-72 (1975) (trial court erred in refusing to give jury instruction including quoted language).
 
 
 14
 At least four children other than Harmon's son have drowned in the Association's irrigation ditch. But since 1957, the Association never has hired anybody to investigate possible ways of preventing the drowning of children in the ditch as it runs through the city of Billings, and it has not placed either the question of drownings or the question of the cost of fencing the ditch on the agenda of the annual meeting of its stockholders. Although the Association took some steps to prevent the drowning of children in the ditch, the record arguably supports an inference that the Association acted with indifference toward the danger of children drowning, which precludes the granting of summary judgment in favor of the Association on Harmon's negligence claim.
 
 III. Strict Liability
 
 15
 Harmon contends that the Association's operation of the irrigation canal within the city limits constitutes an abnormally dangerous activity that subjects the Association to strict liability under sections 519 and 520 of the Restatement (Second) of Torts. Although the Supreme Court of Montana has not adopted those sections of the Restatement, it has held that
 
 
 16
 "one who maintains a condition, or engages in an activity, which involves a high degree of risk of harm to others and is abnormal in the community and inappropriate to its surroundings, is strictly liable for the harm which it causes."
 
 
 17
 Dutton v. Rocky Mountain Phosphates, 151 Mont. 54, 438 P.2d 674, 680 (1968) (quoting W. Prosser, Prosser on Torts Sec. 59, at 329 (2d ed. 1955) ). The court has applied that strict liability rule, however, only in the Dutton case, an action by cattle ranchers against a phosphate manufacturer for damage to livestock and crops from the release of flourine into the atmosphere in a rural area. Moreover, the court has held that the owner of an irrigation canal can be held liable for damage to property allegedly caused by water from the canal only if the owner has been negligent, Billings Realty Co. v. Big Ditch Co., 43 Mont. 251, 115 P. 828, 832 (1911); Fleming v. Lockwood, 36 Mont. 384, 92 P. 962 (1907); King v. Miles City Irrigating Ditch Co., 16 Mont. 463, 41 P. 431 (1895), or can be deemed to have caused the damage intentionally. Rauser v. Toston Irrigation Dist., 172 Mont. 530, 565 P.2d 632, 637 (1977). Courts in other states have held that the construction and maintenance of irrigation ditches is not an abnormally dangerous activity that subjects the ditch owner to strict liability. See, e.g., Stroda v. State Highway Comm'n, 22 Or.App. 403, 539 P.2d 1147 (1975) (rural area); Ramada Inns, Inc. v. Salt River Valley Water Users' Ass'n, 111 Ariz. 65, 523 P.2d 496 (1974). In light of these authorities and the absence of any indication that the Supreme Court of Montana would apply a strict liability rule to the operation of an irrigation ditch, we affirm the district court's ruling that the Association cannot be held strictly liable for its construction and maintenance of the ditch.
 
 
 18
 The judgment of the district court is affirmed with respect to the theories of nuisance and strict liability and reversed and remanded for trial on the theories of attractive nuisance and negligence.
 
 
 19
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 In its brief, the Association argued that Montana's recreational use statute, Mont.Code Ann. Secs. 70-16-301 & -302 (1983), precludes the application of the attractive nuisance doctrine in this case. Because the Supreme Court of Montana has applied the attractive nuisance doctrine on a number of occasions since the enactment of the recreational use statute in 1965, see, e.g., Big Man, 626 P.2d 235; Mascarena, 174 Mont. 11, 568 P.2d 182, and the language of the statute manifests no legislative intention to affect application of the doctrine, the statute does not preclude application of the doctrine to the facts of the instant case. See Smith v. Crown-Zellerbach, Inc., 638 F.2d 883 (5th Cir.1981) (Louisiana law); Paige v. North Oaks Partners, 134 Cal.App. 3d 860, 184 Cal Rptr. 867 (1982). But cf. Burnett v. City of Adrian, 414 Mich. 448, 326 N.W.2d 810 (1982); Granham v. County of Gratiot, 126 Mich. App. 385, 337 N.W.2d 73 (1983)
 
 
 [2]
 Counsel for the Association stated at oral argument that the concrete sides are designed to prevent seepage, a fact that would seem to counsel against allowing the water level to rise above the top of the concrete sides
 
 
 [3]
 Harmon erroneously argues that the Supreme Court of Montana no longer focuses upon the status of an injured party in determining the duty owed by a property owner to the injured party. In a case decided after Corrigan v. Janney, 626 P.2d 838 (Mont.1981), upon which Harmon relies, the court stated: "In Montana, the duty imposed upon a property owner depends upon the status of the injured party on the premises." Cereck v. Albertson's, Inc., 637 P.2d 509, 511 (Mont.1981)