No. 84-418

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

CONNIE LIMBERHAND, Individually, and
as Personal Representative of the
Estate of JAYLON LIMBERHAND, Deceased
Minor,

           Plaintiff and Appellant,

   -vs-

BIG DITCH COMPANY; CITY OF BILLINGS;
KEN NICHOLSON and ALLEN NICHOLSON, each
individually and d/b/a APPLE CREEK
PROPERTY MANAGEMENT, INC.,

           Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Paul M. Warren argued, Billings,
        Montana

    For Respondent:

        Crowley, Haughey, Hanson, Toole & Dietrich; Don Harris
        argued for Big Ditch Co., Billings, Montana
        Keefer, Roybal, Hanson, Stacey & Jarussi; J. Dwaine
        Roybal argued for City of Billings, Billings, Montana
        Jardine, Stephenson, Blewett & Weaver; Lon T. Holden
        argued for Nicholson, Great Falls, Montana

    For Amicus Curiae:

        Ted J. Doney for Mont. Water Development Assoc.,
        Helena, Montana

Submitted: May 2, 1985

Decided: September 26, 1985

Filed:   SEP 26 1985

_Ethel M. Harrison_
_____
              Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, Connie Limberhand, brought this action in the District Court, Thirteenth Judicial District, Yellowstone County, to recover damages for the alleged wrongful death of her 18-month-old son, Jaylon, who drowned in an irrigation ditch.

The irrigation ditch was a lateral from the main channel of the Big Ditch which was constructed early in this century by the Minnesota and Montana Land Improvement Company and subsequently acquired by the Big Ditch Company, which currently owns and operates the ditch and laterals. Big Ditch Company owns the right-of-way where the ditches flow but it does not own the adjacent land. This particular lateral originates west of the City of Billings and ends at Nina Clare Street, approximately one mile within the Billings city limits. Water from the ditch system, including the lateral, is used to irrigate agricultural and other lands.

Apple Creek Apartments, an apartment complex owned and managed by Ken and Allen Nicholson, who do business under the various corporate names appearing above, are located on lands which border the irrigation ditch where Jaylon Limberhand drowned on June 27, 1981. It appears from the record here, though not clearly (unfortunately, all the parties here have failed adequately to develop the applicable facts, and some of the facts herein stated are gleaned from their briefs), that Apple Creek Apartments are located west of Rehberg Lane and west of a daycare center, which also abuts the irrigation ditch, and which is completely fenced. A fence separates the Apple Creek Apartments on the south side from other

- 2 -

residential property. Apple Creek Apartments consists of two buildings, one larger than the other and between the buildings and extending northward from one of them toward the ditch is a paved parking lot which abuts the ditch easement, perhaps within 30 feet of the irrigation ditch.

As admitted by the Nicholsons, on the day of the accident, Connie Limberhand and her young son were guests of certain tenants residing at the Apple Creek Apartments. Jaylon Limberhand apparently wandered away from his mother, left the apartment where they were visiting, crossed the parking lot which separates the apartment complex from the ditch, and slipped or fell into the ditch. Jaylon survived for 1 day in the hospital.

Plaintiff predicates liability as to the City of Billings on the grounds that the City, in the enforcement of its ordinances, failed to declare the open irrigation ditch here a public nuisance and to order the ditch closed or other protective measures taken by Big Ditch Company to prevent drowning accidents.

Each of the named defendants moved the court for a summary judgment in their respective favors, and the District Court granted summary judgments as to all of the defendants.

Connie Limberhand appeals to this Court from each summary judgment against her. She poses the following issues on appeal:

1. With respect to Big Ditch Company the District Court erred in holding that:

(a) Connie Limberhand had not met the elements of attractive nuisance as a basis of liability against Big Ditch.

(b)  Connie Limberhand did not state a cause of action in negligence against Big Ditch.

(c)  The City Ordinances place no additional duty or burden upon Big Ditch Company.

2.  With respect to the City of Billings, Connie Limberhand argues the District Court erred in holding that the City of Billings was under no duty to act and declare the irrigation ditch a nuisance and require implementation of protective devices.

3.  With respect to defendants Nicholsons, Connie Limberhand argues the District Court erred in holding that adjacent landowners owed no duty to the decedent to protect in anyway against drowning accidents on lands adjacent to the Nicholsons' land holdings.

We affirm the summary judgment granted by the District Court in favor of the City of Billings.  We reverse the summary judgments entered in favor of Big Ditch Company and the Nicholsons, and remand to the District Court for further proceedings in accord with this opinion.

## I.  Big Ditch Company

### A.  Attractive Nuisance

The doctrine of attractive nuisance is recognized in Montana and we have recognized the Restatement (Second) of Torts § 339 as setting forth the elements necessary to establish an attractive nuisance.  Big Man v. State (Mont. 1981), 626 P.2d 235, 240, 38 St.Rep. 362, 368; Gagnier v. Curran Construction Company (1968), 151 Mont. 468, 473, 474, 443 P.2d 894, 897, 898; Driscoll v. Clark (1905), 32 Mont. 172, 80 P. 1.  Whether the doctrine of attractive nuisance should be applied to drowning incidents in irrigation ditches has not been clearly stated by us.

- 4 -

It is true that in Fusselman v. Yellowstone Valley Land and Irrigation Co. (1917), 53 Mont. 254, 163 P. 473, this Court made reference to the elements of attractive nuisance in sustaining a directed verdict by the District Court against a plaintiff seeking damages for the drowning death in an irrigation ditch in Livingston of a three-year-old girl. In 1917, this Court was of the opinion that in a pleading for injuries received upon the defendant's property, the complaint must disclose by what right the injured party was upon the premises. In Fusselman, we held that because of the failure of the plaintiff to allege that the decedent was attracted to the canal or that by reason of its peculiar attractiveness, she went upon the canal and met her death, the complaint failed to state a cause of action under the doctrine of the turntable cases.

In the case before us, Connie Limberhand contends that the doctrine of attractive nuisance is applicable as to the Big Ditch Company and that she meets here the elements of attractive nuisance as set forth in Restatement (Second) of Torts, § 339. Big Ditch apparently accepts the applicability of the attractive nuisance doctrine to this case, but contends the elements are not met.

A problem exists with respect to the automatic application of the attractive nuisance doctrine to ordinary irrigation ditches. While such irrigation ditches are artificially constructed, for the most part they have natural characteristics, and there may be little to distinguish them from the numerous streams, rivers and creeks that occur naturally in Montana, and flow in many instances through towns, villages and cities. The attractive nuisance doctrine is not quite applicable to such artificial bodies of water;

- 5 -

otherwise it could be contended that a landowner through whose property a natural stream flows is in reality maintaining an attractive nuisance.

It is because courts have failed to recognize the distinction between bodies of water having natural characteristics and other artificial bodies such as swimming pools, sewage treatment plants and the like, that there appears to be a disparity in the holdings of courts with respect to drowning incidents in artificial bodies of water. For example, the rule announced in Fusselman, that there must be an implied invitation to a child to come upon the owner's land in order to hold the owner liable is not the law of this state today. There are, however, cases in this State and others from which a proper rule can be drawn.

Troglia v. Butte Superior Mining Company (9th Cir. 1921), 270 F. 75, was a case involving an eleven-year-old boy who drowned while swimming in a pond on the premises of the defendant mining company. The pond had been constructed to furnish water to a mill, and was formed by damming a small stream. The pond was 100 feet long and 75 feet wide and from 1 to 12 feet deep. It was not enclosed. There were notices posted around it which said "no trespassing," "private property," "10 feet deep," and "keep away." Nonetheless, boys swam there in summer as a matter of practice. This particular decedent was strong, in the seventh grade and able to read. After two hours of swimming in the pond, he apparently got cramps and drowned. The mining company had an attendant for a pump nearby.

In Troglia, the Court of Appeals stated:

> The degree of care required of one who maintains on his land an artificial pool for a useful purpose is not greater than that required of one through whose

> land flows a natural stream, and he is bound to no
> special care or precaution for the protection of
> children who are in the habit of swimming in the
> same, unless there is in the pool some peculiar
> danger, in the nature of a hidden peril or trap for
> the unwary, of which he has or ought to have
> knowledge.

270 F. at 76.

It is noteworthy that Troglia was decided in 1921 before

the decision in Erie v. Tompkins (1938), 304 U.S. 64, 58

S.Ct. 817, 82 L.Ed. 1188, but nevertheless, Troglia spoke a

rule applicable to a Montana decedent.

In a recent case before the Ninth Circuit, Harmon v.

Billings Bench Water Users Association (9th Cir. 1985), 765

F.2d 1464, the Court of Appeals reversed a summary judgment

in favor of the ditch company granted by the federal district

court in a drowning case in Montana. The Court of Appeals in

Harmon accepted as settled that the attractive nuisance

doctrine was applicable to irrigation ditches in Montana. In

so stating, it relied on Troglia, supra, and upon Coeur

d'Alene Lumber Company v. Thompson (9th Cir. 1914), 215 F.

8. The Court of Appeals decided that there was a genuine

issue of material fact as to whether the ditch might have

presented a hidden danger that Harmon's son did not

appreciate. The mother had testified that the concrete sides

of the ditch were much steeper than the natural bank they

adjoined and that on the day in question, the water was above

the concrete sides. The Court of Appeals likened these facts

to those in Thompson (of which more later) and thus put the

Harmon case within the hidden danger exception of the

Restatement on attractive nuisance. The Court of Appeals

also disagreed with the Federal District Court's holding that

the erection of safety devices such as a childproof fence

along the course of the ditch would be an oppressive burden upon the ditch company.

Coeur d'Alene Lumber Company v. Thompson, supra, was a case arising from the Federal District Court in Idaho. There the defendant had operated a lumber mill at St. Maries and had built a cistern or well for storage of water. The water was used in connection with the operation of the lumber mill. The particular water body had been constructed by the company or its lessee by digging around a natural spring, and placing around the spring a wooden wall approximately 4 feet high and 4 feet square through which the water bubbled up and escaped. The lessee in operating the mill had dumped sawdust and other debris in such manner as to obstruct the discharge of the spring after it filled the well. A pond of water accumulated about 1-2 feet over the level of the planked well. Moreover, sawdust floated on top of the resulting pond. The shallow pond was 12 to 15 feet wide and 25 to 30 feet long and the wooden construction underneath the water was hidden from view. Two boys waded into the pond and one of them suddenly dropped into the constructed well. The other boy tried to save him and both of them drowned. The Court of Appeals found that the circumstances of the well constituted a hidden trap and affirmed a judgment for the wrongful death of the decedent.

From Harmon, Troglia and Thompson, supra, we can deduce a rule proper for application to drowning incidents involving immature children rather than the attractive nuisance doctrine. Accordingly, we hold that the degree of care of one who maintains on his land an artificial stream or body of water for a useful purpose, where the stream or body of water has natural characteristics, is no greater than the degree of

care required of one through whose land flows a natural stream or contains a natural body of water. The owner or user of an artificial stream or body of water having natural characteristics is bound to no special duty of care or precaution for the protection of children who may enter therein, unless there is in or about the artificial stream or body of water some peculiar danger, in the nature of a hidden peril or trap for the unwary, of which the owner or user has or ought to have notice. The doctrine of attractive nuisance as such does not apply to such artificial streams or bodies of water anymore than it applies to natural streams or bodies of water.

Such a holding has these advantages: (1) It avoids the disparity in the cases, some of which hold that attractive nuisance is applicable to irrigation ditches, and most of which hold it is not; (2) the holding is based more on the concept of negligence than attractive nuisance, and the ordinary concepts of negligence, that is, duty, breach and proximately-caused injuries are more useful in determining liability in such instances; and (3) the holding avoids legal fictions, such as attractive nuisance, which developed originally to excuse the unwitting trespass by children.

In Harmon, in footnote 3, the Circuit Court of Appeals felt that this Court had vacillated on the necessity of status of the injured party in determining the duty owed by a property owner to an injured party. 765 F.2d at 1467. In Corrigan v. Janney (Mont. 1981), 626 P.2d 838, 841, 38 St.Rep. 545, 549, in construing section 27-1-701, MCA (formerly section 58-607, R.C.M. 1947), we held that the statute prevented us from distinguishing between social guests and invitees in determining the liability of the

- 9 -

landowner for injuries received. We regard the same statute as declaring the applicable law as to the duty of landowners to persons though they may be trespassers. The test is always not the status of the injured party but the exercise of ordinary care in the circumstances by the landowner. The statute provides:

> Everyone is responsible not only for the result of his wilful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has wilfully or by want of ordinary care brought the injury upon himself.

Section 27-1-701, MCA.

Although in a later case, Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 412, 637 P.2d 509, 511, we stated that the duty imposed on a property owner depends on the status of the injured party, that statement is not correct in the light of section 27-1-701, MCA, above quoted.

It appears plain therefore, that the motion for summary judgment was submitted for decision to the District Court as to Big Ditch Company upon an incorrect theory of liability. We therefore remand this cause to the District Court with respect to Big Ditch for a reconsideration of the motion for summary judgment based on the rule of law expressed herein. We express no opinion as to what that decision should be at this juncture.

B. Negligence

In addition to her theory on attractive nuisance, Limberhand alleged in her amended complaint that the water flow in the ditch was great and that the maintenance of the ditch created a deceptive condition because of grass and weeds growing along the edge of the ditch and under the surface of the water. She also alleged that the

construction, design and maintenance of the ditch omitted all safety measures such as warnings, fences or other protective devices, and that the hazards and dangers of the ditch were hidden and not discoverable by a child of tender years.

In the discussion on attractive nuisance, we have set forth a rule to determine liability, if any, of the owner of lands which contain artificial streams or bodies of water with natural characteristics. If on remand the District Court determines that a genuine issue of material fact exists as to whether the irrigation ditch here in question presented a peculiar danger in the nature of hidden peril or trap for the unwary, a fact issue would arise for a jury or other trier of fact. It would follow that the court would then instruct the jury that the duty of providing warnings, fences or other protective devices for the unwary would be measured by the landowner's duty to exercise "ordinary care or skill in the management of his property" pursuant to section 27-1-701, MCA.

All questions of negligence in this case on the part of Big Ditch Company are inextricably bound up in the primary issue whether the ditch presented a peculiar danger in the nature of a hidden peril or trap for the unwary.

## II. The City of Billings

### Ordinances

Limberhand complains that Big Ditch Company is in violation of City of Billings Ordinance No. 4343, section 10.80.030, which states:

> Every person owning or operating any irrigation ditch or system or portion thereof within the City shall care for, maintain and control said irrigation ditch, system, water being transported and concomitant structures. Said care, control and interactions and reactions to structures and impediments not controlled or maintained by persons

owning or operating the irrigation systems. The duty imposed hereby shall extend to control and removal of all obstructions, litter, debris, plant materials, loose earth, rocks, stones, concrete and wood material without limitation in, on, or around said irrigation ditches.

It is the contention of Limberhand that the ordinance was violated by the Ditch Company, at least as to the plant materials, and therefore summary judgment was improper. Militating against Limberhand is the paucity of facts marshalled by Limberhand before the District Court to show that plant materials or other debris accumulated in such manner as to violate this ordinance, and to be a legal cause of the drowning.

We examine the applicable statutes and ordinances, however, because the court may have to decide issues thereunder on remand.

Section 7-31-4103, MCA, has been on the books in substantially its present form since 1921. It provides:

The city or town council has power to regulate the use and construction of irrigation ditches, drains, and flumes within or running through any city or town.

With respect to open ditches, the legislature enacted Part 42, Title 7, MCA, in 1961 for the avowed purpose of preventing the drowning of children within the limits of an incorporated city or town (sections 7-31-4201 through 7-31-4207, incl., MCA).

Under 7-31-4203, MCA, it is declared that water that flows in an open ditch in an incorporated city is a public nuisance if the city or town, acting through its governing body declares it to be a nuisance. However, section 7-31-4207, MCA, provides that the part does not apply to ditches carrying water used for commercial irrigation water purposes. Ostensibly then, under section 7-31-4207, MCA, any

- 12 -

ordinances adopted by the City of Billings applying to the Big Ditch Company lateral under the authority of section 7-31-4201, et seq., MCA, for the purpose of declaring a ditch a public nuisance, and providing remedial measures is outside the power of the City of Billings.

Ordinance No. 4343 was adopted by the City of Billings on April 27, 1981. Under its provisions, we have already set out section 10.80.030 relating to the care and maintenance of irrigation ditches. The ordinance also provides that failure to care for and maintain the ditches as provided for in section 10.80.030 shall constitute a public nuisance. There are provisions for punishment for violations of the ordinance. The ordinance further provides that the City cannot order a ditch to be discontinued or prohibit the use of the ditch if it is used by 10 percent or more of the abutting landowners on the ditch. In this case, 30.6 percent of the landowners used the ditch for irrigation purposes.

The further contention of Limberhand is that the City had a duty to go forward in this case and determine that the ditch in question is a nuisance and take remedial measures. Limberhand predicates negligence and liability on the part of the City for failure to take such action.

Limberhand fails in this contention on three points: 1) The state statutes empowering cities to adopt ordinances designed to prevent the drowning of children do not apply to commercial irrigation ditches; 2) The city ordinance itself does not apply since more than 10 percent of the abutting landowners use the ditch for irrigation purposes; and 3) Any further action on the part of the City of Billings would require legislative action by the City Council. The failure of the City to take legislative action may not be the basis

- 13 -

of a suit against it for liability, since the City is immune under section 2-9-111, MCA, providing immunity from suit for legislative action and omissions. The summary judgment in favor of the City of Billings is therefore affirmed.

(We do not reach the question, if the question exists, whether Billings Ordinance No. 4343 supersedes state law because of the nature of the charter of the City of Billings.)

In like manner, there is no basis to predicate liability against Big Ditch based upon the city ordinance.

### III. The Nicholsons

The Nicholsons, d/b/a Nicholson, Inc. and d/b/a Apple Creek Ltd. and Property Management Inc., hereafter Nicholsons, owned and managed the Apple Creek Apartments that border the irrigation ditch where Jaylon Limberhand drowned on June 27, 1981. On the day Jaylon drowned, he and his mother, Connie Limberhand, were visiting Connie's sister who was a tenant of the Apple Creek Apartments. The District Court sustained Nicholsons' motion for summary judgment holding that Nicholsons owed no legal duty to the appellant or appellant's decedent.

Appellant contends that the question of whether Nicholsons breached the common law duty to keep the premises reasonably safe and to warn of any hidden or lurking danger is one a jury should decide. We agree. It is well-settled law in Montana that the social guest of a tenant in the common areas of an apartment complex is afforded a degree of protection from harm in relation to the duty of a landlord. Piedalue v. Clinton Elementary School District No. 2 (Mont. 1984), 692 P.2d 20, 41 St.Rep. 2344; Rennick v. Hoover (1980), 186 Mont. 167, 606 P.2d 1079; Olson v. Kayser (1973),

- 14 -

161 Mont. 241, 505 P.2d 394. The grounds surrounding an apartment complex are part of the common area. See Olson, supra. We have said earlier in this opinion that the status of Limberhand as a social guest is not controlling. Nicholsons' duty is governed by the provisions of section 27-1-701, MCA, supra.

The issue of Nicholsons' potential liability based on breach of a duty owed Limberhand's decedent poses a two-part query. One, could an irrigation ditch constitute a sufficient danger to tenants or their guests of an apartment complex to require that the landlord take precautionary measures in order to satisfy his duty to keep the premises reasonably safe? Two, does the fact that the irrigation ditch is owned by another and is located on land adjoining the landlord's common area absolve the landlord of liability as a matter of law?

The apartment owners owed a duty in this case to use ordinary care to have their premises reasonably safe or to warn of any hidden or lurking danger. What constitutes reasonably safe premises is generally considered to be a question of fact. Whether a premises is safe depends to a large extent on what use the property is put to, its setting, location and other physical characteristics, and the type of person who would foreseeably visit the premises, as well as the specific type of hazard or unsafe condition alleged. These and other factors are embodied in the legal concept of "reasonable under the circumstances." For example, the existence of an open irrigation ditch in a farmer's field poses little danger compared to the same irrigation ditch located near an apartment complex populated by families with small children.

The duty of a landlord under section 27-1-701, MCA to use ordinary care in managing his property imposes on him a duty to make the premises reasonably safe under the test of ordinary care for all persons who forseeably might properly come on the premises, old and young, large and small. Tenants and their social guests are necessarily users of rental apartment complexes.

We conclude that a question of material fact exists as to whether the irrigation ditch could present sufficient danger to tenants and their social guests of this apartment complex so that by not taking any remedial or warning measures the landlords may have breached their duty to keep the premises reasonably safe. Whether the landlord breached this duty is a jury question.

We do not mean that landlords are absolute insurers of the safety of their property and environs. What we do mean is that the duty of landlords to others in the management of their property is to use that degree of ordinary care which reasonable persons would use under the same or similar circumstances.

Having affirmatively answered the first question of the two-part query, we address the second question. How does the fact the ditch is not located on Nicholsons' land affect Nicholsons' duty to keep his premises reasonably safe?

Nicholsons flatly state in their brief that there exists no duty on the part of a landowner to guard against conditions on adjoining property over which they have no dominion or control. Nicholsons cite cases that stand for the proposition that an adjacent property owner is not liable for injuries sustained by a youth who gained access to a hazardous condition by crossing his land. These cases are

clearly distinguishable from the instant case. Two cases, however, are on point. Walters v. Greenglade Villas Homeowners Association (Fla. App. 1981), 399 So.2d 538, 539, holds there is no duty on a condominium owners' association to erect a fence to shield small children from the hazards of a canal. In Jones v. United States (4th Cir. 1957), 241 F.2d 26, the federal court construed Maryland law as it existed in 1957 (Maryland did not recognize the doctrine of attractive nuisance) and held that the primary duty to inform, advise and protect a child of tender years must rest upon the parents or others in loco parentis.

Recently, in Piedalue v. Clinton Elementary School District No. 2 (Mont. 1984), 692 P.2d 20, 41 St.Rep. 2344, we rejected a rigid property line determination of liability. In Piedalue, the plaintiff was a social guest visiting a tenant of property owner, Al Baide. Baide maintained a primary road for ingress and egress from his trailer park. Another road which appeared also to provide ingress and egress from the premises abruptly ended in an irrigation ditch 60 feet beyond Baide's property line. We held that Baide's duty to have a reasonably safe premises could extend beyond the premises to the dangerous condition located on land adjacent to Baide's property.

The area owned by Nicholsons adjoining the irrigation ditch was in the dominion and control of Nicholsons. If the instrumentality causing harm is located adjacent to the landowner's property, and the instrumentality poses a clear and foreseeable danger to persons properly using the landowner's premises, we see no reason to shield the landowner from liability as a matter of law. A duty to take some reasonable precautions may exist. This duty may in some

instances be discharged by a warning; under other circumstances remedial action may be required. A jury should be given the opportunity to determine if Nicholsons used reasonable care under the circumstances in discharging any duty they may have owed to Jaylon Limberhand to maintain a safe premises. The fact that the irrigation ditch was not located on Nicholsons' land does not as a matter of law bar appellant's claim.

Nicholsons further contend that § 85-6-107, MCA, statutorily imposes exclusive liability on incorporated water users associations (Big Ditch Company) for any injury caused by failure to maintain safe working and operating conditions of an irrigation system. Nicholsons assert this statute bars appellant's case against them. Nicholsons read the statute too broadly. Section 85-6-107, MCA, appears in the code defining the rights and liabilities of ditch companies with respect to the State of Montana. The State disclaims liability for injuries allegedly caused by its regulation of such companies. We do not find the statute applicable.

Nicholsons argue that constructing a fence or other barricade would interfere with Big Ditch Company's rights and place Nicholsons in the untenable position of safeguarding its property or being subjected to suit by Big Ditch Company. This argument is based on speculation and lacks merit. Nicholsons offered no proof that erecting a fence would interfere with Big Ditch Company's rights. A fence constructed on Nicholsons' property may not interfere with Big Ditch Company's right-of-way anymore than the construction of the apartment complex itself.

Nicholsons further argue that they should not be required to construct a fence because other landowners have

not. Nicholsons' prudence is not measured by the imprudence, if any, of others. Nicholsons' duty is measured by the standard of reasonable care.

We reverse the order of the District Court granting summary judgment to Nicholsons and hold that issues of material fact exist concerning whether Nicholsons exercised reasonable care in maintaining a safe premises. We remand this case for further proceedings in accordance with this opinion.

Reversed in part; affirmed in part. Costs to appellant.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices