JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
Plaintiffs filed a complaint in which they alleged that the State of Montana had a duty to maintain fences and cattle guards which were built by the State on State property to protect motorists on Interstate 90 from wandering livestock. Plaintiffs alleged that the State was negligent by failing to maintain these fences and cattle guards and that plaintiff Elroy Yager was injured as a result of the State’s negligence. The State denied that it was negligent in its answer. However, no evidence has been offered by the State, by affidavit or otherwise, which would controvert plaintiffs’ allegation of negligence. The District Court’s order of summary judgment, and this Court’s opinion affirming that order, are based simply on the conclusion that the State had no duty to maintain its own property in a way that would prevent an unreasonable risk of injury to others.
The majority’s conclusion is wrong as a matter of law for several reasons.
First, the State has the same duty that all private property owners have by statute in Montana to act reasonably in the maintenance of its property. Second, the State assumed a duty by adopting the Uniform Maintenance Manual which required that it erect and maintain the fences which were the subject of this suit. Finally, the *463 State assumed the duty to build and maintain the fence and cattle guard in question when it accepted federal funding for the construction of Interstate Highway 90, and it agreed as a condition to that funding to build and maintain the protective devices in question.
DUTY TO EXERCISE ORDINARY CARE
Article II, section 18, of the Montana Constitution provides in relevant part that:
The state ... shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.
Section 2-9-102, MCA, provides that:
Every governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature under Article II, section 18, of the Constitution of the State of Montana.
It is clear, then, that unless specifically prohibited by the Legislature, the State is hable to the same extent that a private individual would be hable for its negligence as defined in the common law. Under the common law of Montana, we have previously held that statutory obligations give rise to duties which, if breached, form the basis of a common law cause of action. For example, § 27-1-701, MCA, provides that:
Except as otherwise provided by law, everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has willfully or by want of ordinary care brought the injury upon himself.
In Limberhand v. Big Ditch Company (1985), 218 Mont. 132, 144-45, 706 P.2d 491, 498-99, we held that this statute imposed a duty on land owners to use ordinary care in the management of their property so as not to create an unreasonable risk to those who could be foreseeably injured by their failure to do so. According to our Constitution and the statutory authority previously cited, the State had the same duty to maintain the fence and cattle guard that it constructed on the right-of-way that it owned. The majority opinion fails to discuss why the duty imposed by § 27-1-701, MCA, applies to every private person in this State, but not to state government itself.
*464 HIGHWAY MAINTENANCE MANUAL
As pointed out in the majority opinion, the State of Montana’s own highway maintenance manual provides that it is the State’s responsibility to maintain fencing along interstate highways. The manual even points out exactly why it is important to maintain fences. It provides that “[placement of a fence not only outlines the limits of the right of way, but also keeps humans and animals away from hazardous areas. Careful inspection and routine maintenance should not be neglected.”
However, the majority dismissed the obligation created by the State’s own maintenance manual by concluding that even though failure to comply with the maintenance manual is evidence of negligence, the manual did not create any duty.
It is true that we have specifically held that “violations of the Maintenance Manual provided evidence of negligence.” Townsend v. State (1987), 227 Mont. 206, 209, 738 P.2d 1274, 1276. However, it is a non sequitur to conclude that there can be evidence of negligence without a duty. We have previously held that a duty is a prerequisite for finding negligence. In Roy v. Neibauer (1981), 191 Mont. 224, 226, 623 P.2d 555, 556, we held that:
It is an elementary principle of law that before a claim for relief can be made against a defendant for negligence, the existence of a duty by the defendant to the plaintiff must be shown, along with the breach of that duty and a resulting injury.
If there has to be a duty and a breach of duty before there can be a claim of negligence, how can failure to comply with the maintenance manual be evidence of negligence, but no basis for establishing a duty? In its effort to protect the State from accountability for its negligence in this case, the majority’s opinion is logically inconsistent with the majority’s previous decisions.
DUTY UNDER FEDERAL LAW
The majority briefly reviews State statutory law which imposes a duty to fence highways, but concludes that since those statutes were not applicable to the area where this action occurred, there was no statutory duty imposed on the State to protect motorists on this highway from wandering livestock. However, I do not understand why the majority’s review of statutory obligations is limited to state law. What rational distinction is there between state statutes which *465 impose a duty to fence highways and federal statutes which impose the same duty?
The State of Montana concedes, in its appellate brief, that the area where this accident occurred was originally fenced and protected by the State Highway Department because the State was required to do so by federal law. In its brief, the State concedes that:
While state law is permissive regarding Interstate fencing, the primary if not exclusive reason that these highways are fenced is that fencing is required by the Federal government as a precondition for receiving critical construction funding. A complete discussion of the applicable Federal statutes and regulations would be complicated and lengthy and is unnecessary here. It is sufficient to note that Federal law requires states to comply with Federal standards for design (23 U.S.C. §§ 106 and 109), construction (23 U.S.C. § 114), and maintenance (23 U.S.C. § 116) of Interstate highways, and for inspections and approvals to insure compliance.
The statutes referred to in the State’s brief are part of the Federal-Aid Highway Act, 23 U.S.C. §§ 101 through 160 (1958). A more complete explanation of the controlling provisions is found in Daye v. Commonwealth of Pennsylvania (1972), 344 F. Supp. 1337. That court explained that:
Section 106(a) provides for the submission by the state and approval by the United States Secretary of Transportation [Secretary] of surveys, plans, specifications and estimates for each proposed project. Section 109(a) provides that the Secretary shall not approve the plans and specifications unless they are conducive to traffic needs, safety, durability and economy. Section 109(d) provides that the location of highway signs shall be subject to the approval of the State Highway Department with the concurrence of the Secretary. Section 109(e) provides that no funds shall be approved unless proper safety protective devices complying with certain safety standards approved by the Secretaiy are installed. Section 114(a) provides that highway construction shall be under the supervision of the State Highway Department, subject to the inspection and approval of the Secretary. Section 116(a) provides that it is the duty of the state to maintain the highways, and Section 116(c) provides that if the highway is not being properly maintained, the Secretary may withhold approval of further projects.
Daye, 344 F. Supp. at 1347.
The State cites Daye for the principle that these federal statutes do not create a duty on the part of the State to construct and maintain *466 its fences and protective devices. However, I do not agree with that interpretation oí Day e. The Federal District Court simply found that the statutes in question did not give rise to an independent private cause of action which was in contravention of Pennsylvania’s immunity statutes. However, it is clear that the statutes create a duty on the part of the State to comply with federal requirements as a condition to federal funding, and the State concedes that those requirements included constructing and maintaining the fences which are the subject of plaintiffs’ complaint.
Finally, it appears to me that the majority opinion is based on several false premises. The Court concluded that § 60-7-103, MCA, which requires fencing of the right-of-way constructed through open range areas was not applicable because the location where this accident occurred was within a horse herd district. However, the majority then proceeds to justify its decision based upon its conclusion that “Montana has been, and continues to be, an open range state.” They hold that “[ujnder the open range doctrine, neither the State nor livestock owners have a duty to prevent livestock from wandering onto roadways.” Why does the majority rely on the fact that this is a herd district for purposes of rejecting plaintiffs’ claim that the State had a statutory duty to fence, and then rely on an inconsistent conclusion that Montana is an open range state when it declines to impose a common law duty to maintain the State’s fences?
Likewise, the majority concludes that since the Montana Legislature has not imposed a duty to fence the particular right-of-way where this accident occurred, we should not impose that duty. What about the duties imposed by the federal government and by the Department of Highways itself?
To me, this claim involves simple issues. The State, by statute, had a duty to maintain its property, including its fence and cattle guard, in a condition that would have prevented unreasonable risk of harm to others, including motorists on the interstate highway. Plaintiffs alleged that it failed to do so and that Elroy Yager was injured as a result of that negligent omission. The State has offered no evidence to the contrary, therefore, summary judgment should have been denied. If the statutory duty imposed on everyone in Montana to exercise reasonable care in the maintenance of their property is not a clear enough creation of a duty for the majority, then certainly the obligations imposed by the Highway Department’s own maintenance manual, or the commitment made by the State, pursuant to federal *467 statute, in order to obtain federal highway funds, create additional duties.
I am at a loss to find any justification for the majority opinion. If the State was not negligent, or if the State’s negligence was not a cause of injury to Mr. Yager, then our laws should protect the State from liability. However, if the State was negligent, and its negligence caused harm to Mr. Yager, then simple fairness and justice require that the State be accountable for its conduct. It is beyond my comprehension why any court would go to the lengths that this Court has gone to in an effort to allow the State to avoid accountability for its negligent omissions.
By its reliance on statutes which are irrelevant, and prior case law which is not on point, the majority has constructed what appears at first glance to be a rational justification for denying recovery in this case. The question that I have a difficult time understanding is to what justifiable purpose is that effort directed?
For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court.