*279 JUSTICE NELSON
dissenting:
I respectfully dissent. This case should not be decided on summary judgment; there are material disputed facts that should be resolved by a jury.
In a personal injury case we must start from the basic premise that issues of negligence are not ordinarily susceptible to summary adjudication, but are better determined at trial. Dillard v. Doe (1992), 251 Mont. 379, 382, 824 P.2d 1016, 1018. Itis only when reasonable minds could reach but one conclusion that questions of fact may be determined as a matter of law. Brohman v. State (1988), 230 Mont. 198, 202, 749 P.2d 67, 70.
In the instant case we need go no further in determining that there are material facts at issue than to Johnson’s affidavits. While our opinion focuses on the conflict in the affidavits regarding whether Bossard lifted the door alone or with the assistance of Johnson, that is not the major difference at all. The substantive difference between the two affidavits derives from the fact that Johnson changes his whole story about the imminency of the peril from his first affidavit to his second. In his December 10,1992, affidavit, Johnson states at paragraph 10:
At the time the sliding door fell off the track and Richard was injured, we both felt it was necessary to replace the door on the track. After the door fell off the track, it was not in a steady position, and we were both concerned that if we left the door as it sat, there would be a risk of injury to the next person who came upon the door and tried to move it. We were also concerned that leaving the door sitting on the ground with only one wheel sitting in the track might further damage the door, the track or the rollers. For those reasons, Richard and I attempted to replace the door on the track.
In his June 29,1993, affidavit, Johnson had a much different view of those crucial facts, however. He states at paragraph 5:
On May 25, 1991, after one end of the door slipped off the track there was no immediate need to replace it upon the track. It certainly needed to be replaced in due time to avoid the possible bending of the track or the very remote possibility of it falling. There was no emergency need to act in replacing the door.
In the two affidavits Johnson’s position goes from concern that the door, hanging from one roller in an unsteady position, would injure the next person who tried to move it, to no more concern than that at *280 some indeterminate point in the future, because of a “remote possibility” of the door falling, that it would have to be replaced. In his first affidavit the door would likely injure the next person who came in contact with it; in his second affidavit the door could, with little risk, hang on one roller until Johnson got around to fixing it. That is the major difference.
Bossard’s deposition testimony clearly supports the statements in Johnson’s first affidavit — i.e. that the door was not in a safe position and that it should not be left hanging from the one roller:
Q: (Attorney Luck) What do you mean when you say you thought in your own mind it was precarious?
A: (Bossard) I thought it could fall off and the door could be torn, damaged, the runner might get damaged if a breeze, a wind, or if somebody came by and it fell on them it could kill them or hurt them.
While the rescue doctrine may not be rooted in “future possibilities,” a fair reading of Johnson’s first affidavit and Bossard’s deposition testimony clearly indicate that both men were concerned that the door was not stable and could likely fall and seriously injure the next person who came in contact with it. Our opinion points out that the “‘next person to come along’ may never come along.” Aside from the absurdity of that statement, it was for the jury to make that determination.
It is undisputed that Johnson knew about the defective door, that Bossard did not, that the defect was hidden and that Johnson failed to warn Bossard that the door would fall off its track if it were pushed too far.
Bossard filed his complaint on the theory that he was injured because Johnson negligently maintained his property by failing to repair a door known by Johnson to be defective, by failing to warn Bossard of that defect known only to Johnson, thereby creating a danger to persons and property which invited the “rescue” by Bossard when the door fell off its track. Johnson’s first affidavit and Bossard’s deposition testimony support that theory, and Bossard argues that he was entitled to partial summary judgment on the issue of liability on that basis, without more.
Even disregarding Johnson’s second, contradictory affidavit, given Johnson’s first affidavit and Bossard’s deposition testimony I believe that there remain issues of fact to be decided by the jury concerning *281 the urgency of the situation and the imminency of the peril after the door fell and as to the application of the “rescue doctrine” to this case.
Furthermore, I disagree with the Court’s conclusion that Johnson had no duty to warn Bossard. We cite to Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 706 P.2d 491, for the rule that a landowner has a duty to those on his property to use ordinary care under the circumstances, regardless of whether the injured party is a guest, invitee or trespasser. We also pointed out in that case that where a condition on the landowner’s property presents "... a peculiar danger in the nature of hidden peril or trap for the unwaiy ...” a fact issue arises for the jury and that,
[i]t would follow that the court would then instruct the jury that the duty of providing warnings ... for the unwaiy would be measured by the landowner’s duty to exercise “ordinary care or skill in the management of his property” pursuant to section 27-1-701, MCA.
Limberhand, 706 P.2d at 497.
Here it is undisputed that Johnson was aware of the defective condition of the door, that he needed to repair it, that it would fall off its track if pushed too far, and that the defect was not apparent. It is also undisputed that Bossard was unaware of that danger and that Johnson did nothing to make Bossard aware of the condition of the door. Under the facts here and our prior case law, I cannot conclude that Johnson had no duty to Bossard. lb the contrary, Johnson had a duty to use ordinary care in maintaining his property, and he had a duty to warn Bossard of the dangerous condition of the door. Whether those duties were breached by Johnson in this case was for the jury to decide.
Finally, I disagree with our conclusion that Johnson’s conduct was not the proximate cause of Bossard’s injury. Suffice it to say that it is axiomatic that questions of causation in a negligence case are for the finder of fact to decide. See for example, Sizemore v. Montana Power Company (1990), 246 Mont. 37, 803 P.2d 629, and Thayer v. Hicks (1990), 243 Mont. 138, 793 P.2d 784.
Accordingly, I would reverse the grant of summary judgment for Johnson and would remand this case for trial.
JUSTICES HUNT and TRIEWEILER concur in the foregoing dissent.